**Gene A. RAMSBOTTOM, Plaintiff,**

v.

**FIRST PENNSYLVANIA BANK, N.A., Defendant.**

**Civ. A. No. 87–4858.**

United States District Court,
D. New Jersey.

Aug. 8, 1989.

406

Thomas Martin, Delran, N.J., for plaintiff.

Manya L. Kamerling, Haddonfield, N.J., for defendant.

## OPINION

RODRIGUEZ, District Judge.

This matter comes before the court on a motion of defendant First Pennsylvania Bank to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated herein, the motion to dismiss count three of the complaint will be granted and the motion to dismiss counts one and two will be denied.[1]

In this case the following facts alleged are considered true for the purposes of this motion. Plaintiff, Gene A. Ramsbottom was hired by defendant in January of 1984, for the position of divisional vice president, trust controller division. When plaintiff began his employment, he was given a multi-page policy manual which outlined procedures for arriving at a decision to terminate an employee and procedures for effectuating such a termination. Although plaintiff performed his duties well, he was terminated on October 14, 1986. In addition, plaintiff's representative met with outside counsel for defendant who informed the representative that defendant would provide plaintiff's prospective employers with a favorable employment reference. When prospective employers requested information regarding plaintiff

---

1. Plaintiff originally named the bank as well as two bank employees in the complaint. These defendants filed the current motion for dismissal on three grounds. First, defendants asserted that this action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because plaintiff failed to allege the subject matter jurisdiction of this court. However, plaintiff filed an amended complaint on February 22, 1989 alleging jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Therefore, this argument is moot and will not be considered by the court. Second, defendants argued that this court lacked in personam jurisdiction over the individual defendants. Because the parties have stipulated to the dismissal of these individuals, this argument is also moot and will not be considered by the court. Finally, defendants asserted that the plaintiff fails to state a claim upon which relief may be granted. This argument will now be addressed by the court. In addition, because the individual defendants have been dismissed, there is only one defendant remaining in the action.

they were referred to the personnel department which in turn gave out only the date at which plaintiff left defendant's employment.

Plaintiff's complaint alleges three causes of action. First, plaintiff alleges that the bank breached its contract by failing to adhere to the termination procedures delineated in the policy manual. Second, plaintiff brings a promissory estoppel claim asserting that he detrimentally relied on the promises contained in the policy manual and on the promises of defendant's representative regarding a favorable reference. Third, plaintiff asserts an intentional interference with contractual relations based on the actions of two employees of the bank who effected plaintiff's firing.

Defendant moves for dismissal of each count. Specifically, defendant claims that under Pennsylvania law, policies contained in personnel manuals do not rise to the level of contractual obligations and therefore cannot be used as a basis for a breach of contract claim or a claim based on promissory estoppel. Also, defendant claims that it could not reasonably expect the promise of a favorable reference to induce definite action or forbearance on the promisee's part and, therefore, any damage was not the result of detrimental reliance on counsel's alleged promise. Finally, defendant argues that as a matter of law, the bank cannot be liable for tortious interference with its own employment contract.

## I. CHOICE OF LAW

It is well established that a district court in a diversity action must apply the choice of law rules of the forum state in determining which state's law to apply to the substantive issues before it. *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988) (citing *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Accordingly, this court will apply New Jersey conflicts of law analysis to determine which

state law to apply. *Shuder*, 859 F.2d at 269.

In contract cases, New Jersey courts apply the law of the place where the contract is made, "unless the dominant and significant relationship of another state to the parties and the underlying issues dictates that this basic rule should yield." *State Farm Mutual Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 37, 417 A.2d 488 (1980); *see also McFadden v. Burton*, 645 F.Supp. 457, 465 (E.D.Pa.1986). The assessment of the significant relationship should "encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy." *State Farm*, 84 N.J. at 37, 417 A.2d 488.

Plaintiff argues that the governmental policies behind the different termination at will laws creates a "false conflict," which resolves the applicable law "without a choice between the laws of the two states." Brief by Plaintiff at 6 (citing *Morgart v. Union Mut. Life Ins. Co.*, 644 F.Supp. 934, 935 (D.N.J.1986) (citation omitted)). Plaintiff claims that the application of Pennsylvania law or New Jersey law will result in the same outcome, and thus a choice of law is unnecessary.[2]

The Supreme Court of New Jersey, in *Woolley v. Hoffman–LaRoche, Inc.*, 99 N.J. 284, 297, 491 A.2d 1257 (1985), held that a termination clause in a policy manual, which included a procedure required before termination, could be found to be contractually enforceable even if the employment is for an indefinite term or would otherwise be terminable at will. The court stated that such provisions should be construed by the courts "in accordance with the reasonable expectations of the employees." *Id.* at 297–98, 491 A.2d 1257. The *Woolley* court modified the rules of at-will termination due to the modern view against such a harsh outcome:

**2.** Defendant asserts that plaintiff concedes that Pennsylvania law applies to the tort claims in this action. Reply Brief by Defendant at 1 (citing Brief by Plaintiff at 17 n. 17). Plaintiff, having submitted papers to the court subsequent to the reply brief, has not disputed this point. As a result, Pennsylvania law will be applied to the tort issues.

The at-will rule has come under severe criticism from commentators who argue that the economic justifications for the development of the rule have changed dramatically and no longer support its harshness. . . .

This Court has clearly announced its unwillingness to continue to adhere to rules regularly leading to the conclusion that an employer can fire an employee-at-will, with or without cause, for any reason whatsoever.

*Id.* at 290–91, 491 A.2d 1257 (citations omitted). Thus, *Woolley* clearly announced the New Jersey Court's willingness to modify the law of at-will termination because of the policy of protecting employees from the harsh result of termination for any reason whatsoever.

Pennsylvania courts have also recognized that a policy manual may be found to be contractually enforceable. *See Scott v. Extracorporeal,* 376 Pa.Super. 90, 545 A.2d 334, 337 (1988). However, unlike New Jersey, Pennsylvania courts have chosen to adhere to the common law rule of at-will termination with only limited exceptions. *See Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974); *Clay v. Advanced Computer Applications, Inc.,* 559 A.2d 917 (Pa. June 5, 1989) (Zappalo, J. concurring); *but see Clay,* 559 A.2d 917 (Nix, C.J. concurring). The exceptions recognized by the court are if the discharge was (1) with the specific intent to harm, or (2) in violation of a clear mandate of public policy. *Scott,* 545 A.2d at 336; *Paul v. Lankenau Hospital,* 375 Pa.Super. 1, 543 A.2d 1148, 1155 (1988). Furthermore the Pennsylvania courts have found the public policy exception to be an extremely narrow one, "closely bounded by the employer's right to run his business as he sees fit." *Paul,* 543 A.2d at 1155 (citations omitted).

Therefore, New Jersey provides greater protection for its employees from the harsh effect of at-will termination. New Jersey appears to follow the modern trend which moves away from the traditional rule of at-will termination, giving greater rights to its citizens in the employment context. Pennsylvania, although creating limited exceptions, adheres to the traditional rule which provides a greater opportunity for employers to terminate the employment relationship and to control their own businesses. Although the issue in question, narrowly drawn for this motion, is whether a policy manual may take on contractual significance, the broader issue before the court is that manual's effect on the at-will employment presumption. Therefore, in looking at the application of Pennsylvania and New Jersey law it becomes apparent that the policies behind each state's law will have a substantial effect on the outcome of this case and require the court to apply the choice of law rules.

Because the contract in this case was executed in Pennsylvania between a New Jersey resident and a Pennsylvania corporation, the court must apply Pennsylvania law unless New Jersey has a dominant and significant relationship to the parties and the contract claims. *See State Farm,* 84 N.J. at 37, 417 A.2d 488. Plaintiff asserts that the contacts with the State of New Jersey, *i.e.* a suit by a New Jersey resident in a New Jersey court against a corporation which does business in New Jersey, significantly outweighs the contacts with Pennsylvania. The contacts with Pennsylvania are that defendant is incorporated in Pennsylvania, the contract was executed in that state, defendant's main offices are located in the Commonwealth, and the activities giving rise to plaintiff's cause of action occurred in Pennsylvania.

This court finds that no important or significant relationship mandates the application of New Jersey law in the present case. Although New Jersey provides for greater protection for plaintiff, Pennsylvania law does not entirely frustrate the policies behind New Jersey law. In addition, Pennsylvania has greater contacts with this action, inasmuch as plaintiff only resides in New Jersey whereas defendant is a Pennsylvania corporation and the performance and alleged breach of the contract took place in Pennsylvania. Consequently, Pennsylvania law, the law of the place where the contract was made, applies to this case.

## II.  MOTION TO DISMISS

A complaint may be dismissed under Fed.R.Civ.P. 12(b)(6) when it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). On a Rule 12(b)(6) motion, the district court is to limit its consideration to the facts alleged in the complaint. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02. The court must "accept all well pleaded allegations in the complaint as true and view them in the light most favorable to plaintiff." *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir. 1985).

### A.  Breach of Contract

■ Plaintiff alleges that at the outset of his employment, he was given a policy manual which delineates the defendant's procedures for terminating employment. Plaintiff asserts that the policies expressed in this manual constituted promises rising to the level of contractual obligation, and as a result defendant breached its obligation when terminating plaintiff's employment. Defendant claims that under Pennsylvania law, policies contained in personnel manuals do not rise to the level of contractual obligations and therefore cannot be used as a basis for a breach of contract claim.

"Since at least 1891, Pennsylvania courts have recognized the rule that, absent a contract, employees may be discharged at any time, for any reason, or for no reason at all." *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 511 A.2d 830, 834 (1986) (citing *Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306, 310 (1986)). The court in *Martin* stated that in such circumstances "there was already a contract between the [parties], the terms of which were that [the employee] could be discharged for any or no reason." 511 A.2d at 838 (citations omitted). This is termed the "at-will presumption," which permits both employer and employee to end the employment at any time. This means neither party is bound to follow any partic-ular procedure or decision making process in terminating the employment.

Pennsylvania has recently recognized two exceptions to this rule. If the termination was (1) with specific intent to harm, or (2) in violation of a clear mandate of public policy a plaintiff may maintain a cause of action. *Scott,* 545 A.2d at 334; *Paul,* 543 A.2d at 1148. Plaintiff, however, does not raise either of these claims. Instead, plaintiff claims the decision making and termination procedures outlined in the employee policy manual rise to the level of contractual obligations and thereby supplant the at-will rule. Taking the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff, the only issue for the court to resolve is whether under Pennsylvania law a policy manual may rise to the level of a contractual obligation.

The Pennsylvania court has recently addressed this issue in *Scott v. Extracorporeal.* In summarizing the law of Pennsylvania, the *Scott* court stated:

The status of the contractual enforceability of employee handbooks has recently been clarified in several appellate decisions. *A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule. See Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 511 A.2d 830 (1986); *Reilly v. Stroehmann Bros. Co.,* 367 Pa.Super. 411, 532 A.2d 1212 (1987); *DiBonaventura v. Consolidated Rail Corporation,* 372 Pa.Super. 420, 539 A.2d 865 (1988). *But [s]ee Richardson v. Charles Cole Memorial Hospital,* 320 Pa.Super. 106, 466 A.2d 1084 (1983) and *Muscarella v. Milton Shoe Manufacturing Company, Inc.,* 352 Pa.Super. 158, 507 A.2d 430 (1986), which found handbooks and personnel policies unenforceable due to the fact that they are not bargained for by the employee but are unilaterally distributed by the employer. The absence of a bargained-for exchange was deemed to preclude their enforceability. The more recent decisions, *see Martin v. Capital*

*Cities Media Inc., supra, et al.,* do not find the lack of a bargained-for exchange a bar to enforcing handbooks against employers. Since these decisions represent the most recent trend of our court in this evolving area, we will analyze the instant handbook by reference to the standard enunciated in them.

545 A.2d at 337 (emphasis added). Similarly, the District Court for the Eastern District of Pennsylvania in *Klages v. Sperry Corp.*, No. 83–3295, slip op. (E.D.Pa. July 8, 1986), 1986 WL 7636, held that "under Pennsylvania law a written personnel policy may serve as the basis for a cause of action for beach of a provision contained within it if, under all the circumstances, the parties manifest an intent that it become a legally binding contract." *Id.* at 7. Therefore, the court must determine whether the parties intended the provisions of the policy manual to become legally binding and thereby supplant the at-will presumption.

The intentions of the parties may be determined from either an express promise to convert the at-will presumption or the circumstances surrounding the hiring. "A reasonable person may be presumed to regard such handbooks as having legally binding contractual significance when the handbook, or oral representations about the handbook, in some way clearly state that it is to have such effect." *Martin*, 511 A.2d at 841–42. Furthermore, "[i]t is for the court to interpret the handbook to discern whether it contains evidence of the employer's intention to be legally bound and to convert an at-will employee...." *Id.* at 841. However, "the employment should be presumed to be at-will unless an intention to alter the relationship is clearly stated in the handbook." *Id.*

The circumstances surrounding the hiring and distribution of the manual may also be considered in order to clarify the intentions of the parties. "A court will examine numerous factors surrounding the hiring to determine whether a reasonable person in employee's situation would understand that his employment status is at-will." *Scott,* 545 A.2d at 340. "[I]t is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the stipulation of the parties, the objects they apparently have in view, and the nature of the subject matter of the agreement." *Martin,* 511 A.2d at 839 (quoting *Prince v. Confair*, 366 Pa. 538, 542, 79 A.2d 224, 226 (1951)).

Another way courts may infer that the parties intended to overcome the at-will presumption is the presence of additional consideration passing from employee to employer. *Scott,* 545 A.2d at 336; *Darlington,* 504 A.2d at 311; *Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 526 A.2d 1192, 1202 (1987); *Veno v. Meredith,* 357 Pa.Super. 85, 515 A.2d 571, 577 (1986). "When 'sufficient additional consideration'[3] is present, courts infer that the parties *intended* that the contract not be terminable at will." *Scott,* 545 A.2d at 339 (emphasis in original).

In the present case plaintiff has sufficiently pleaded that he reasonably believed the provisions of the policy manual constituted promises on the part of defendant and that those promises, specifically those providing procedures for termination, would supplant the at-will presumption. Complaint at ¶ 10. Therefore, defendant's motion to dismiss the first count of the complaint is denied.

### B. Promissory Estoppel

Plaintiff alleges that he relied to his detriment on (1) the termination policies in the manual and (2) outside counsel's promise that defendant would provide plaintiff's prospective employers with a favorable reference. Defendant contends that under Pennsylvania law claims for promissory estoppel may not be based on policies in personnel manuals. Defendant also claims that it could not reasonably expect that an alleged promise of a favorable reference

---

**3.** "Additional consideration" is present if the employee bestows a legally sufficient benefit or incurs a sufficient detriment for the benefit of the employer beyond the services for which he was hired. For a discussion of what constitutes "sufficient" additional consideration refer to the cases cited above.

would induce definite action or forbearance on the promisee's part and that any damage was not the result of reliance on counsel's alleged statement.

In Pennsylvania an action for promissory estoppel may lie only where (1) the promisor makes a promise which should reasonably be expected to induce a definite action or forbearance on the part of the promisee, (2) the promise actually induces such action or forbearance and (3) injustice can be avoided only by its enforcement. *Cardamone v. University of Pittsburgh*, 253 Pa. Super. 65, 74, 384 A.2d 1228, 1233 (1978); *Paul*, 543 A.2d at 1153. Defendant argues that the case of *Banas v. Matthews International Corp.*, 348 Pa.Super. 464, 502 A.2d 637 (1985) is controlling on this issue and that under *Banas*, the doctrine of promissory estoppel may not provide a basis for an employee's recovery for commitments made in a policy manual. However, as the court pointed out in *Paul*, the *Banas* court's conclusion was based on a finding that there was no promise on the part of the employer and no reliance on the part of the employee. *Paul*, 543 A.2d at 1153. Furthermore, the *Banas* court even noted that if the employee handbook had contained the provision allegedly inducing the reliance, "if not expressly at least by clear implication, ... appellee's claim might have merit." *Banas*, 502 A.2d at 647. In addition, the *Paul* court, applying the *Cardamone* test, held that "[plaintiff] did indeed make out a claim for estoppel, and that, unlike the employee in *Banas*, [plaintiff] showed both a promise and a reasonable reliance upon that promise, we find that *Banas* does not control here." *Paul*, 543 A.2d at 1152. Consequently, the procedures expressed in a policy manual *may* provide the basis for a promissory estoppel claim.

In applying the *Cardamone* test to the complaint the court finds that plaintiff has sufficiently alleged that the policies set forth in the manual constituted promises made by the defendant; that these promises were made with defendant's actual or constructive expectation that plaintiff would rely on them; that plaintiff did in fact rely on them; and that such reliance caused him harm. *See* complaint at ¶¶ 10, 20, 22–23. Therefore, with reference to the policy manual, plaintiff has sufficiently stated a claim for promissory estoppel so as to survive a motion to dismiss.

█ Next, the court must apply the *Cardamone* test to plaintiff's claim that he detrimentally relied on the promises of defendant's outside counsel. The complaint alleges that defendant's outside counsel, acting as defendant's agent made representations to plaintiff's representative regarding a favorable employment reference. *Id.* at ¶ 13. Plaintiff further claims that in making such a promise defendant should reasonably have expected plaintiff would rely on it, that plaintiff did in fact rely on it, and that as a result he has suffered damages. *See id.* at ¶¶ 16, 21, 22–23. Therefore, plaintiff has sufficiently pleaded his claim so as to meet the requirements of this test.

However, defendant also argues that plaintiff has not "shown" his damages are the result of his reliance and that plaintiff is in fact in no worse position than had counsel not made this alleged promise. This argument may well have merit. However, plaintiff is not required to make such a "showing" in order to survive a motion to dismiss. The court's responsibility is to determine whether, in accepting the allegations of the complaint as true, it appears *beyond doubt* that plaintiff can prove no set of facts which would entitle him to relief. *Conley*, 355 U.S. at 45, 78 S.Ct. at 101. Here plaintiff has sufficiently pleaded the requisite elements of a claim based on promissory estoppel and until such time as the parties have developed a factual record upon which to rely, defendant's motion is premature. Consequently, defendant's motion to dismiss count two of the complaint is denied.

### C. Tortious Interference

█ Plaintiff alleges that as a result of his firing by defendant's employees, defendant is liable for tortious interference with contractual relations based on a theory of respondeat superior. Alternatively, defendant claims that a third party, the essential

ingredient in a tortious interference with contract claim, is lacking. Defendant avers that the employees implementing the termination were at all times acting within the scope of their employment[4] and therefore, the employees and their corporate employer are considered one and the same. Consequently, there is no third party, only plaintiff and defendant acting through its agents.

Defendant cites the case of *Daniel Adams Assoc. v. Rimbach Pub.*, 360 Pa.Super. 72, 519 A.2d 997 (1987) as supporting its position. The court in *Daniel Adams* stated that it is essential to a recovery for tortious interference with contract that there be a third party other than defendant. *Id.* 519 A.2d at 1000 (citations omitted). Furthermore, a corporation can act only through its officers, directors and other agents and when "a party contracts with a corporate agent who acts within the scope of his authority ... the corporate principal alone is liable for breach of the contract." *Id.* at 1000–01 (citations omitted). After reviewing the case law in Pennsylvania, the *Daniel Adams* court held that "where ... a plaintiff has entered into a contract with a corporation, and that contract is terminated by a corporate agent who has acted within the scope of his or her authority, the corporation and its agent are considered one so that there is no third party against whom a claim for contractual interference will lie." 519 A.2d at 1002; *see also Raab v. Keystone Insurance Co.*, 271 Pa.Super. 185, 412 A.2d 638, 639–40 (1980) (holding that "[i]n as much as Defendant Company can only act through its employees ... the individual Defendant and the company defendant are one and the same entity for the purposes of this action. Consequently, there is no third party against who [sic] ... a claim of interference with contract can lie").

Plaintiff places reliance in the decision of *Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Su-

per. 560, 422 A.2d 611 (1980). In *Yaindl*, the employees of one division of a corporation who had recently fired plaintiff lied to employees of an entirely separate division of the same corporation which caused the latter division to refuse to hire plaintiff. That case, however, is factually distinguishable from the case at hand. In *Yaindl* the court was dealing with two divisions within the same corporation which were sufficiently autonomous and distinct so as to be considered separate entities. Also, the court concluded the employees were acting outside the scope of their employment when they interfered with the plaintiff's prospective employment.

This court rejects plaintiff's contention that *Yaindl* applies in this case. Here, as in *Daniel Adams*, the employees, as agents of the corporation, were acting within the scope of their authority when terminating a contract already in existence. The corporation and the agents are therefore considered one so that no third party interferer exists against whom a claim may lie. As a result, the court grants defendant's motion to dismiss count three of the complaint.

An appropriate order will be filed.

### ORDER

For the reasons set forth in the opinion of this court filed even date,

IT IS on this 8th day of August, 1989 ORDERED that defendant's motion to dismiss counts one and two of the complaint is hereby *DENIED;* and

IT IS FURTHER ORDERED that defendant's motion to dismiss count three of the complaint is hereby *GRANTED.*

---

**4.** Since defendant filed its motion, the parties have stipulated that the individual defendants, who have now been dismissed by stipulation of the parties, were at all times acting within the scope of their employment. *See Joint Stipulation of Agency Relationship.*