578 A.2d 8

**Bernard J. CURRAN, Appellant,**

v.

**The CHILDREN'S SERVICE CENTER OF WYOMING COUNTY, INC., and Milford E. Barnes, Appellees. (Two Cases)**

Superior Court of Pennsylvania.

Argued March 29, 1990.

Filed Aug. 9, 1990.

Petition for Allowance of Appeal
Denied Jan. 7, 1991.

---

30

Peter G. Loftus, Scranton, for appellant.

Paul A. Barrett, Scranton, for appellees.

Before WIEAND, BECK and POPOVICH, JJ.

WIEAND, Judge:

Bernard J. Curran was employed as a psychologist by The Children's Service Center of Wyoming County, Inc. (CSC) on April 18, 1983. On June 10, 1985, he was given notice by Milford E. Barnes, acting in the capacity as agent for CSC, that his employment would be terminated on June 14, 1985. Curran thereafter commenced a civil action against Barnes and CSC in which he sought to recover damages for wrongful discharge and invasion of privacy. In a separate count he alleged that Barnes had wrongfully interfered with the contractual relationship between Curran and CSC. After the pleadings had been closed and Curran's depositions had been taken for discovery purposes, the trial court granted motions filed by Barnes and CSC for summary judgment. Curran has appealed from the order entering summary judgment.

A motion for summary judgment may properly be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). See also:

*Craddock v. Gross*, 350 Pa.Super. 575, 577–578, 504 A.2d 1300, 1301 (1986); *Berardi v. Johns–Manville Corp.*, 334 Pa.Super. 36, 38, 482 A.2d 1067, 1068–1069 (1984); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 140, 476 A.2d 928, 930 (1984). When a motion for summary judgment is made and supported as provided in Rule 1035, the non-moving party may not rest upon the mere allegations and denials of his pleadings. To avoid summary judgment the non-moving party must set forth specific facts by way of affidavit, or as otherwise provided in Rule 1035, demonstrating that a genuine factual issue exists. *Phaff v. Gerner*, 451 Pa. 146, 149, 303 A.2d 826, 829 (1973); *Ressler v. Jones Motor Co., Inc.*, 337 Pa.Super. 602, 609, 487 A.2d 424, 428 (1985). The inquiry in deciding a motion for summary judgment "is whether the admissible evidence in the record, in whatever form, from whatever source, considered in the light most favorable to the respondent to the motion, fails to establish a prima facie case...." *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238 (3d Cir.1983), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1985). Summary judgment serves to eliminate the waste of time and resources of both litigants and the courts in cases where a trial would be a useless formality.

▇ "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Paul, M.D. v. Lankenau Hospital*, 524 Pa. 90, 95, 569 A.2d 346, 348 (1990), quoting *Clay v. Advanced Computer Applications*, 522 Pa. 86, 89, 559 A.2d 917, 918 (1989). An employee at-will may be discharged with or without cause. "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Id.*

Appellant does not quarrel with these principles of law but argues that his employment was not at-will but for the term of his life. Although there was no express agreement that his hiring was to be other than at-will, he contends that the circumstances surrounding his hiring were such as to

evidence that the parties intended a relationship which could not be terminated by the employer except for cause. The trial court determined that, as a matter of law, appellant could not show more than at-will employment.

When appellant was hired as a staff psychologist, he was placed on probation. The salary terms were set forth in a letter addressed to appellant on April 18, 1983. The letter stated: "The position of psychologist is temporary, depending upon your meeting the Pennsylvania licensing requirements for clinical psychologist." Appellant did not take the licensing exam in October, 1983, because he felt he was not adequately prepared. He took the exam in April, 1984, but failed to pass it. In a letter dated August 10, 1984, and signed by Joseph DeVizia, executive director, and Milford E. Barnes, clinical director, appellant was informed that his status had been reviewed by the personnel committee of the board and, because he had not received his license, he would remain in a temporary employment status and would not be approved for an increase in salary.

Although appellant successfully took the licensing exam in October, 1984, he was thereafter advised by letter of March 5, 1985, signed by Barnes, that CSC had decided, after full review of all relevant matters, that it would not offer him a permanent position on its professional staff. Appellant was also told to begin looking for another job. Finally, on June 10, 1985, appellant received a letter, signed by Barnes, which stated: "This note will confirm our verbal agreement on May 30, 1985, that your employment at the Children's Service Center would terminate, by mutual consent, on June 14, 1985."

Appellant's contention that he expected lifelong employment from which he could be discharged only for cause is not alone an adequate basis for overcoming the presumption of employment at-will where the parties have not agreed to a specific term of employment. Decisions in Pennsylvania evince a reluctance to enforce contracts of employment for life or for periods of similar breadth. *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 96, 545 A.2d 334,

337 (1988). See: *Ross v. Montour Railroad Co.*, 357 Pa.Super. 376, 516 A.2d 29 (1986) (expectation of "life long" employment alone not sufficient to overcome the at-will rule); *Murphy v. Publicker Industries, Inc.*, 357 Pa.Super. 409, 516 A.2d 47 (1986) (promise of lifetime employment not in itself sufficiently definite to overcome at-will presumption); *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571 (1986) (employer's statements to employee, including "I want to retire together," held too broad and vague to overcome at-will presumption); *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986) (employer's statement that employee was hired to work on "long range project" held too vague and unspecified to overcome at-will presumption); *Betts v. Stroehmann Bros.*, 355 Pa.Super. 195, 512 A.2d 1280 (1986) (employee's understanding that employment was to be "long term" insufficient to overcome at-will presumption).

"[A] written personnel policy may serve as the basis for a cause of action for breach of a provision contained within it if, under all the circumstances, the parties manifest an intent that it become a legally binding contract." *Ramsbottom v. First Pennsylvania Bank N.A.*, 718 F.Supp. 405, 410 (D.N.J.1989), quoting *Klages v. Sperry Corp.*, No. 83–3295, slip op., 1986 WL 7636 (E.D.Pa. July 8, 1986), 1986 WL 7636. See: *Scott v. Extracorporeal, Inc.*, *supra* 376 Pa.Super. at 97, 545 A.2d at 337.

■ The employee handbook given to appellant at the time of his employment contained references to hiring practices, probation, employee benefits, termination of employment, and other conditions of employment. It provided that employees who resigned were expected to give thirty days notice, but no notice was required where termination was by mutual agreement. During the probationary period, an employee could be terminated by the employer by giving notice. After a probationary period of temporary employment had been served, a permanent status might be acquired, but even such a position could be terminated because of retrenchment or reorganization. A permanent

employee who was discharged for unsatisfactory performance had a right of review according to standards set forth in the handbook.

Appellant was hired as an employee at-will and placed in a temporary status. There was, as he concedes, no agreement that he would be given permanent employment for life or other extended period. Appellant never did achieve permanent status. When his employment came to an end, he was still a temporary employee. At that time, there clearly was no basis on which appellant could reasonably have believed that he was an employee who could be discharged only for "just cause." Cf. *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986), *alloc. denied*, 514 Pa. 643, 523 A.2d 1132 (1987).

 Appellant also asserts that an implied contract of permanent employment was created by the fact that he had given additional consideration to his employer by remaining in his position without a pay raise for two years and by obtaining state certification as a licensed psychologist. It is correct that employment may be taken out of an at-will status where an employee has given his employer additional consideration, other than the services for which he was hired, from which it may be inferred that he was contracting for employment which could not be terminated at will. *Darlington v. General Electric, supra* 350 Pa.Super. at 199, 504 A.2d at 314. In such cases, an employee will not be subject to discharge without just cause for a reasonable time. *Veno v. Meredith, supra* 357 Pa.Super. at 102, 515 A.2d at 580. In *Darlington v. General Electric, supra,* the Court said:

> The term "consideration" is not used here as it is in the usual contractual context to signify a validation device. The term is used, rather, more as an interpretation device. When "sufficient additional consideration" is present, courts infer that the parties intended that the contract will not be terminable at-will. This inference may be nothing more than a legal fiction because it is possible that in a given case, the parties never truly

contemplated how long the employment would last even though additional consideration is present. Even so, the at-will presumption would be overcome. On the other hand, if the parties specifically agreed that the employment would be at-will, even though additional consideration were present, we would expect a court to construe the contract according to the parties' stated intention and hold it to be at-will. Thus, we start with the usual at-will presumption which, let us say, has not been overcome by evidence of a contract for a term or for a reasonable length of time. Then, if sufficient additional consideration is present, the law presumes this to be sufficient to rebut the at-will presumption. Such a contract could not be rightfully terminated at-will but would continue for a reasonable length of time. 56 C.J.S. *Master and Servant* § 31. However, the presumption created by the additional consideration rule could itself be rebutted by evidence that the parties specifically contracted for employment at-will.

. . . .

[A] court will find "additional consideration" when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform. "If the circumstances are such that a termination of the relation by one party will result in great hardship or loss to the other, as they must have known it would when they made the contract, this is a factor of great weight in inducing a holding that the parties agreed upon a specific period." 3 A. Corbin, *Corbin on Contracts* § 684 (1960). *Id.* 350 Pa.Super. at 199–202, 504 A.2d at 314–315.

In the instant case, there was no additional consideration from which an agreement could be inferred that appellant would not be subject to termination at will. It was appellant's decision to continue working in a temporary status without an increase in salary after expiration of the first six

months. Similarly, appellant was aware that licensing by the Commonwealth of Pennsylvania was a condition of employment. It was not an additional consideration from which it could be inferred that appellant's employment was subject to conditions different than other at-will employees. There is, in short, no basis in this action for inferring that appellant and his employer had contracted for an employment which could not be terminated at will.

Under these circumstances, the trial court properly held that appellant could have no cause of action against CSC for terminating his employment.

■ It has been observed that the cause of action for invasion of privacy " 'is not one tort, but a complex of four.' " *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 129 n. 9, 327 A.2d 133, 136 n. 9 (1974), quoting W. Prosser, *Handbook of the Law of Torts* § 117, at 804 (4th ed. 1971). See also: Restatement (Second) of Torts § 652A; Prosser and Keeton on Torts § 117, at 851 (5th ed. 1984). These four potential causes of action consist of (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light before the public. Restatement (Second) of Torts § 652A. Appellant's contention appears to be that he received publicity which unreasonably placed him in a false light before the public. Thus, his complaint contains averments that Barnes and CSC pursued a wanton and deliberate course of conduct in which they damaged his reputation, destroyed enjoyment of his job and impaired his future financial security. They did this, appellant alleges, by making assertions that (1) his work performance and his reports were unsatisfactory and (2) he abused sick leave policies.

This tort is defined at Restatement (Second) of Torts § 652E as follows:

One who gives publicity to a matter concerning another that places the other before the public in a false light is

subject to liability to the other for invasion of his privacy, if

 (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

 (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

The Superior Court has held that this section of the Restatement is a part of the law of Pennsylvania but that the contours of the tort created thereby are amorphous. *Larsen v. Philadelphia Newspapers*, 375 Pa.Super. 66, 81, 543 A.2d 1181, 1188 (1988), *alloc. denied*, 520 Pa. 597, 552 A.2d 251 (1988); 520 Pa. 597, 552 A.2d 252 (1988); 520 Pa. 606, 553 A.2d 968 (1988); *cert. denied*, —— U.S. ——, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989). "The interest protected by this Section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position...." Restatement (Second) of Torts § 652E, comment b. The rule is also limited by the requirement that the false information be given "publicity." This "publicity" differs from the "publication" which is required in connection with liability for defamation. "Publicity," as an element of the tort of invasion of privacy, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts, § 652D, comment a. Moreover, the rule

 applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.... It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his

position, that there is a cause of action for invasion of privacy.

Restatement (Second) of Torts § 652E, comment c. See also: *Chicarella v. Passant*, 343 Pa.Super. 330, 494 A.2d 1109 (1985); *Harris by Harris v. Easton Publishing Company*, 335 Pa.Super. 141, 483 A.2d 1377 (1984).

This count of appellant's complaint was correctly dismissed by the trial court. In the first place, there was not the kind of "publicity" envisioned by the Restatement when it defined the tort of invasion of privacy. Appellant neither alleged nor showed such "publicity." The only communication appearing from the pleadings and discovery was that necessary to enable the defendant employer to make a decision regarding the termination of appellant's employment.

Such communication, moreover, cannot be deemed highly offensive to a reasonable person. An employee must expect and cannot complain when his or her performance on the job is examined and evaluated by a superior. This time-honored procedure was not intended to be made tortious by Section 652E of the Restatement (Second) of Torts.

A cause of action for intentional interference with a contractual relationship may be sustained even though the employment relationship is at-will. *Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super 560, 575 n. 6, 422 A.2d 611, 618 n. 6 (1980), quoting Restatement (Second) of Torts § 766, comment g. However, since a corporation can act only through its agents, and Barnes, the individual defendant, has been identified in appellant's complaint as the agent of CSC, there is no third party against whom an action for intentional interference with a contractual relationship can lie. See: *Ramsbottom v. First Pennsylvania Bank, N.A.*, *supra; Daniel Adams Associates v. Rimbach Publications Co.*, 360 Pa.Super. 72, 519 A.2d 997 (1987), *alloc. denied*, 517 Pa. 599, 535 A.2d 1057 (1987); *Martin v. Capital Cities Media, Inc.*, *supra.*

It is patently clear, therefore, that appellant has been unable to posit a legally cognizable cause of action on account of the termination of his employment. As such, the trial court properly entered summary judgment in favor of appellee-defendants.

Since appellant has failed to allege any underlying cause of action, his claim for punitive damages must also fail.

The order granting appellees' motions for summary judgment is affirmed.