## Solano v. Mitchell

C.P. of Bucks County, no. 96-006371-05-2.

*Edwin P. Gant,* for plaintiff.
*Hugh P. O'Neill,* for defendant.

GARB, *P.J.,* September 9, 1998—This is a negligence action in which plaintiff seeks damages for personal injuries sustained in a motor vehicle accident. Defendant has moved for summary judgment based upon the limited tort option of the Motor Vehicle Financial Responsibility Law.[1] Based upon our review of the record,

---

1. 75 Pa.C.S. §1701.

we determine that summary judgment shall be entered for the defendant for all noneconomic claims.

Section 1705(a)(1) of the Act provides essentially that each insurer shall notify each named insured of the latter's right to choose the limited or full tort option with the understanding that a premium benefit is derived from the limited tort option. Section 1705(d) provides that each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as a consequence of the fault of another person pursuant to applicable tort law. That section further provides:

"Unless the injury sustained is a *serious injury,* each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, except that: . . . ." (emphasis in original)

Therefore, the question for disposition is whether, on this record, the plaintiff has demonstrated that he suffered "serious injury."

It has now been determined in Pennsylvania that the resolution of this question is one of law for the court to be made in advance of trial and may be determined where there is an adequate record by summary judgment. *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), *allocatur granted,* 544 Pa. 608, 674 A.2d 1072 (1996). Therein, the Superior Court held that the trial court may make this threshold determination of the existence of serious impairment of body function where there is no dispute of fact. In the context of summary judgment, the court must determine initially (1) whether the plaintiff as moving party has established that he or she has suffered serious impairment of a bodily function; (2) whether the defense as moving party has established that he or she has not suffered serious impairment of a bodily function; or (3) whether

there remains a genuine issue of material fact for the jury to decide. *Curran v. Children's Service Center of Wyoming County Inc.,* 396 Pa. Super. 29, 578 A.2d 8 (1990), *allocatur denied,* 526 Pa. 648, 585 A.2d 468 (1991). In deciding whether a material issue of fact exists for the jury, the court should not focus on the injury but rather should focus on the nature and extent of plaintiff's impairment as a consequence of that injury. *Dodson v. Elvey, supra.*

In addressing the question of whether there is serious impairment of body function, the court in *Dodson* adopted the standard established in Michigan in virtually identical legislation, and as explicated in *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896 (1986). Therein the court in *DiFranco v. Pickard,* provided as follows:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent and permanency of impairment . . . In determining whether the impairment was serious, several factors must be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious." 427 Mich. at 39, 398 N.W.2d at 901.

An impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's

life. *Dodson v. Elvey, supra,* citing *Oswin v. Shaw,* 129 N.J. 290, 609 A.2d 415 (1992). It must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation. *Dodson v. Elvey, supra,* citing *Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). See also, *McClung v. Breneman,* 700 A.2d 495 (Pa. Super. 1997) and *Leonelli v. McMullen,* 700 A.2d 525 (Pa. Super. 1997), which specifically adopted the factors to be considered by our courts as set forth in *DiFranco v. Pickard.*

Plaintiff was apparently injured when the vehicle he was driving collided with the vehicle driven by the defendant on September 5, 1994 on Street Road, Bensalem Township, Bucks County, Pennsylvania. Following the accident, plaintiff sought medical attention at Frankford Hospital the day after the accident. He was not hospitalized.

He began treatment with John J. Lipsey D.C. on September 21, 1994. X-ray examinations were negative for fracture or any other injuries. Dr. Lipsey diagnosed his injuries as cervical and lumbar sprain and strain with evidence of muscle spasm and edema. Plaintiff treated with Lipsey Chiropractic on approximately 19 occasions, the last visit being on December 22, 1994. Dr. Lipsey referred the plaintiff to Harry A. Cooper D.O., an orthopedic surgeon. Dr. Cooper diagnosed the plaintiff suffered from a cervical and lumbar sprain and strain. His examination revealed mild decreased range of motion in the cervical and lumbar spine. His reflexes were normal, and compression of his cervical spine did not produce any radicular symptoms. No muscle atrophy was noted. However, there was some tenderness in the lumbar spine. Dr. Cooper recommended conservative treatment with hot packs and ultrasound. Plaintiff treated with Dr. Cooper on only one occasion.

Plaintiff was also treated by Stephen E. Mazlin M.D., a neurologist, on approximately four occasions. The final visit was on March 29, 1995. Dr. Mazlin noted that there was no loss of consciousness or cranial lacerations sustained as the result of the impact. No MRIs were performed. Dr. Mazlin's neurologic examination was essentially normal, and his impression was that of lumbar sprain with possible radiculopathy. Dr. Mazlin recommended an MRI and an EMG evaluation.

Dr. Mazlin saw the plaintiff again on January 18, 1995, at which time he reviewed the lumbar MRI, which was normal. Although plaintiff continued to complain of pain and urinary problems, Dr. Mazlin reported as follows at that time:

"Rafael Solano sustained lower back trauma during a motor vehicle accident on September 5, 1994 resulting in a lumbar sprain and lumbo sacral radiculopathy. Given the negative MRI, this radiculopathy may be on the basis of post-traumatic nerve root contusion or contusions, and the patient will return for a formal electro diagnostic or a neuroelectro diagnostic study. I am somewhat concerned about his urinary problems, although this may be due to a mild UTI not related to this accident. I have asked him to have a urinalysis and urine culture, depending upon the results, the patient may need further evaluation by a urologist."

Plaintiff had a neuroelectro diagnostic evaluation on January 19, 1995. This study was consistent with mild radiculopathy. Dr. Mazlin suggested steroid injection, which plaintiff refused. Plaintiff never had steroid injection. Dr. Mazlin recommended physical therapy and conservative treatment.

Dr. Mazlin last saw the plaintiff in March of 1995, and, at that time, noted his impressions as follows:

"The patient slowly shows evidence of mild improvement from injuries sustained during a motor vehicle accident on September 5, 1994. Since he responded to additional therapy, we can now put the lumbar epidural steroid trial on hold. I have no other recommendations for the time being. He can continue using PRN Relafln/Flexoril. The patient will call me with any new/progressive problems."

Therefore, a review of all of these medical records which are part of this record reflect soft tissue injuries of a limited extent or duration to plaintiff's neck and lumbar area. At his deposition on September 2, 1997, plaintiff essentially testified that he had residual pain in his neck as the result of the alleged injuries. At that time, he was also treating with a chiropractor in Puerto Rico. However, the records of that treatment were not produced by plaintiff's counsel.

At the time of this accident, plaintiff was employed as a horse trainer at Philadelphia Park. Subsequent to the accident, he moved to Puerto Rico where he is currently a very successful horse trainer. Plaintiff missed a total of two days' work as the result of this accident.

These findings are all of record. Based upon these findings, we conclude that the defendant, as the moving party, has established that the plaintiff has not suffered serious impairment of a body function, and that there remains no genuine issue of material fact for a jury to decide. *Dodson v. Elvey, supra.* We make this determination not by focusing upon the injury or injuries themselves, but rather upon the nature and extent of plaintiff's impairment as a consequence of the injuries. In this regard, there appears to be no serious and significant ongoing impairment whatsoever. Although plaintiff claims to continue to suffer some pain and limitation of motion, there appears to be no serious

and significant ongoing limitation on plaintiff's activities. He is fully employed, missed only two days of work, has achieved increased success in his occupation, and suffers no serious, if any, lack of ability to perform all of his personal, physical functions. Therefore, we conclude on this record that there was no impairment of body function of a serious nature, and therefore, that the plaintiff has not reached the threshold whereby he may be permitted to recover noneconomic loss.

Accordingly, summary judgment will be entered for the defendant and against the plaintiff for any claim for noneconomic loss.

### ORDER

And now, to wit, September 9, 1998, it is hereby ordered that summary judgment is entered for the defendant and against the plaintiff for all claims of noneconomic loss.