## Atkinson v. Snyder

2

C.P. of Bucks County, no. 97-4278-05-2.

*Josephine Carabello Patti,* for plaintiff.
*Marissa Boyers,* for defendants.

GARB, *P.J.,* April 15, 1999—This is a negligence case arising from a motor vehicle accident which occurred on or about September 28, 1996 at 1:30 p.m. at or about the ramp from Route 213 to southbound U.S. Route 1, in Bensalem Township, Bucks County, Pennsylvania. The accident occurred when the vehicle driven by defendant, James Snyder, and owned by defendant, Kathleen Snyder, collided with the rear of a

vehicle operated by the plaintiff which was stopped at a stop sign. The complaint alleges that defendant, James Snyder, was negligent in the operation of the motor vehicle, and that Kathleen Snyder is liable on the theory of negligent entrustment. Pleadings and discovery are completed. Both defendants have moved for partial summary judgment on the grounds that plaintiff has failed to reach the threshold permitting non-economic recovery pursuant to his limited tort insurance policy. Partial summary judgment will be granted for defendants.

Section 1705(a)(1) of the Motor Vehicle Financial Responsibility Law[1] provides that each insurer shall notify each insured of the latter's right to choose the limited or full tort option with a premium benefit for the choice of limited tort. The notice, as mandated by the Act, provides that it shall state that under the limited tort option, the insured may seek recovery for all medical and out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury." Section 1705(d) provides that each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law, but "unless the injury sustained is a *serious injury,* each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss . . . ." (emphasis added)

In view of the fact that plaintiff has admittedly chosen the limited tort option, the question for disposition is whether, on this record, plaintiff has demonstrated that

---

1. 75 Pa.C.S. §1701.

he suffered "serious injury" in the context of a summary judgment analysis.

*Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), *allocatur granted,* 544 Pa. 608, 674 A.2d 1072 (1996) held, inter alia, that the resolution of whether a limited tort plaintiff has sustained "serious injury" is one for the court to be made in advance of trial, not an issue for the jury, and may be determined when there is an adequate record by summary judgment. Regardless of whether *Dodson v. Elvey, supra,* can be construed to have decided that the issue of serious injury is always one of law for the court, pretrial, that issue has now been set to rest by our Supreme Court in *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998) which held that the issue of determination of "serious injury" may be determined by summary judgment by the application of traditional summary judgment principles. That court held that the traditional summary judgment standard is to be followed, that the threshold determination was not to be made routinely by a trial judge court, but rather, must be left to a jury, "unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." *Washington v. Baxter,* 553 Pa. at 446-47, 719 A.2d at 740.[2] Therefore, in the context of summary judgment principles, the court must determine initially (1) whether the plaintiff as moving party has established that he or she has suffered serious impairment of a bodily function; (2) whether the defendant, as moving party, has established that the plaintiff has not suffered serious impairment of a bodily function; or (3) whether there remains a genuine issue of material fact for the jury to decide.

---

2. The Supreme Court, in *Washington v. Baxter,* affirmed the grant of summary judgment by the trial court.

*Curran v. Children's Service Center Inc.,* 396 Pa. Super. 29, 578 A.2d 8 (1990), *allocatur denied,* 526 Pa. 648, 585 A.2d 468 (1991). As stated more succinctly in *Washington v. Baxter, supra,* whether "reasonable minds could not differ on the issue of whether a serious injury had been sustained."

In addressing the question of whether there is a serious impairment of body function, the court in *Dodson, supra,* adopted the standard established in Michigan in virtually identical language, and as explicated in *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896 (1986). In that regard, in footnote 11, the Supreme Court in *Washington v. Baxter* affirmed *Dodson* in adopting the *DiFranco* standard. The court in *DiFranco v. Pickard, supra,* sets forth that standard as follows:

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) what body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) was the impairment of body function serious?

"The focus on these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent and permanency of an impairment . . . In determining whether the impairment was serious, several factors must be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment and any other relevant factors. An impairment need not be permanent to be serious." 427 Mich. at 39, 398 N.W.2d at 901.

An impairment involves more than the injury itself. The consequences of the injury must involve a serious

impact for an extended period of time on a plaintiff's life. *Dodson v. Elvey, supra,* citing *Oswin v. Shaw,* 129 N.J. 290, 609 A.2d 415 (1992). It must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation. *Dodson v. Elvey, supra,* citing *Licari v. Elliott,* 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). See also, *McClung v. Breneman,* 700 A.2d 495 (Pa. Super. 1997) and *Leonelli v. McMullen,* 700 A.2d 525 (Pa. Super. 1997), which, once again, adopted the factors to be considered by our courts as set forth in *DiFranco v. Pickard.*

A co-worker of the plaintiff arrived at the scene of the accident shortly after its occurrence. Although an ambulance had arrived, plaintiff declined to utilize it to the hospital, but rather was driven to the hospital emergency ward at St. Mary's Hospital by a co-worker. His vehicle was driven from the scene by another co-worker. In the accident, the plaintiff hit his head on the crossbar which did not result in a cut, but rather, a bump, bruise and black eyes. His left arm was sore. At the emergency room, his complaints were dizziness, seeing rings and spots, a ringing in his ears, disorientation and soreness. No other part of his body than his head and arm hurt at that time. In the hospital, they x-rayed his neck and head and released him the same day. He was driven home by his wife.

Plaintiff went to see his family doctor, Ilene DiGregorio, on September 30, a couple of days after the accident. At that time, his complaints were dizziness, ringing in his ears, soreness in his lower back, stiffness and headaches. The doctor prescribed medication and therapy in the form of physical manipulation, heating pads, and electronic stimulation. The therapy was administered at her office. He returned on three different

occasions for that treatment. He took the medication only briefly.

Plaintiff then went to Dr. Ronald D. Abraham D.O. on a referral by his lawyer. At that time, he was not unhappy with the care he received from Dr. DiGregorio. He began to see Dr. Abraham on October 4. He prescribed medication, in fact a few different medications, each for a brief period of time, which were discontinued by the plaintiff because he did not like the way they made him feel. Dr. Abraham likewise prescribed physical therapy. The physical therapy consisted of heating pads, electronic stimulation and an exercise stretching routine. Initially, he got the physical therapy five times a week and then three days a week up to February of 1997.

The dizziness gradually abated after a period of time, and at the time of his deposition on September 17, 1997, he still experienced ringing in his ears once or twice a week for approximately 20 minutes each. At that time, he was still getting headaches three or four times a week, or sometimes, five times a week. He took aspirin and Excedrin for the headaches which sometimes worked. He still experienced neck pain and back pain with the neck pain decreasing but the back pain increasing. He first started experiencing the lower back pain shortly after the accident and it has progressively gotten worse.

Dr. Abraham recommended a CAT scan and bone scan, at which time a bulging disc was discovered. At the time of the deposition, plaintiff was no longer being treated.

At the time of the accident, the plaintiff was employed by the United States Postal Service and had been for approximately nine years. He was supervisor of customer services. He supervised approximately 110 em-

ployees. He missed approximately four weeks of work as the result of the accident. At the time of the deposition, he was unable to move large parcels and felt discomfort in riding in the back of a vehicle on inspection routes if they were extended. He still experienced pain and stiffness in his lower back, but was able to perform all other functions at work.

The plaintiff had routinely participated in gymnasium activities involving weightlifting. At the time of the deposition, although he was unable to do some of the things he had previously done, he was still able to "work out" three times per week. He complained that he was not able to frolic with his 4-year-old son in all of the ways he had previously, but was still able to pick him up and play with him. Otherwise, it appeared that he suffered no further disabilities.

Based upon the foregoing, we are satisfied that the defendants have established that the plaintiff cannot reach the threshold to permit recovery for noneconomic losses. In reviewing this entire record, and the totality of it, we are satisfied that there is no issue regarding "serious impairment of body function" for a jury to decide because reasonable minds could not differ on the issue of whether a "serious injury" had been sustained. It was not. *Washington v. Baxter, supra.* On that basis, there is no issue of material fact to be decided in this case, *Curran v. Children's Service Center Inc., supra,* and, therefore, partial summary judgment must be granted for the defendants.

## ORDER

And now, to wit, April 15, 1999, it is hereby ordered that partial summary judgment is entered for the defendants and against the plaintiff for all claims of noneconomic loss.