535 A.2d 1177

Linda A. THOMPSON, and Donald D. Thompson, her Husband, Appellants,

v.

The NASON HOSPITAL, and Edward D. Schultz, M.D., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 1, 1987.

Filed Jan. 11, 1988.

Petition for Allowance of Appeal Granted June 7, 1988.

116

Karen L. Steele, Altoona, for appellants.

Karen E. Pfeffer, Holidaysburg, for Nason, appellee.

Before CIRILLO, President Judge and JOHNSON and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This is an appeal from the order entered by the trial court granting summary judgment in favor of the Defendant–Appellee Nason Hospital (Nason). The Plaintiff–Appellants raise three issues for our consideration. For the reasons which follow, we are constrained to reverse the order of the lower court.

We begin our review of this case by recalling that summary judgment is controlled by Pa.R.C.P. 1035(b) which, in pertinent part, states:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Moreover, in reviewing a motion for summary judgment, the trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, as well as any admissions on file, giving the non-moving party the benefit of all reasonable inferences which may be drawn therefrom. *Mattia v. Employers Mutual Companies*, 294 Pa.Super. 577, 440 A.2d 616 (1982). Additionally, the record as a whole must be examined in a light most favorable to the party opposing the motion for summary judgment, with all

doubts being resolved against the moving party. *Held v. Neft,* 352 Pa.Super. 195, 507 A.2d 839 (1986). Finally, in examining the record, the trial court is not to attempt to resolve conflicting contentions of fact or conflicting inferences that may be drawn from the facts. *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973 (1985).

With these considerations in mind, we turn to the record in this case. A review thereof reveals that the Plaintiff-Appellant Linda Thompson was involved in an automobile accident on March 16, 1978 and was transported by ambulance to the emergency room of Nason Hospital. Mrs. Thompson was admitted with head and leg injuries when Dr. Edward D. Schultz[1] arrived at the hospital. Dr. Schultz was a physician who enjoyed staff privileges at Nason and with whom Mrs. Thompson had a prior physician-patient relationship. As will become clear, there was some question concerning the continuing nature of this relationship. On the date of the accident, Dr. Schultz entered the hospital through the emergency room department to begin making morning rounds. Although Dr. Schultz only enjoyed staff privileges at Nason and was not "on call" in the emergency room, he was advised by a nurse that Mrs. Thompson had been involved in an automobile accident and was in the emergency room. Without being specifically requested by either of the Plaintiffs, Dr. Schultz and Dr. Jones, an ophthalmologist, appeared and began to treat Mrs. Thompson. Dr. Schultz subsequently admitted her to the intensive care unit of Nason and attended to her care over the duration of her hospitalization at Nason. It is alleged that Mrs. Thompson developed an intracerebral hematoma, resulting in permanent disability, during her hospitalization at Nason. Specifically, it is alleged that her injuries were the result of the negligence of Dr. Schultz as well as other purported agents, servants and/or employees of the hospital.

1. Dr. Schultz remains a defendant in the action below; however, he is not a party to this appeal.

■ The first issue raised by the appellants concerns whether a question of material fact was presented by the record, as to whether Dr. Schultz was the ostensible agent of the Defendant–Appellee Nason Hospital, such that the trial court erred in granting summary judgment in Nason's favor on this issue. The concept of ostensible agency was first recognized in our Commonwealth by this Court in *Capan v. Divine Providence Hospital,* 287 Pa.Super 364, 430 A.2d 647 (1980). There, pursuant to instructions by our Supreme Court, we determined that the trial court had erred in failing to instruct the jury on the Restatement (Second) of Torts § 429 (1965). We noted that the Section 429 approach to vicarious liability had become known as the ostensible agency theory. We further pointed out that Section 429 provided an exception to the general rule that an employer is not liable for torts committed by an independent contractor in his employ. *Capan,* 287 Pa.Superior Ct. at 367, 430 A.2d at 648. Section 429 states:

One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

In adopting the theory of ostensible agency, we noted that several jurisdictions had applied the concept to cases involving hospital liability for the negligence of independent contractor physicians. *Capan,* 287 Pa.Superior Ct. at 368, 430 A.2d at 649. We also noted two factors which contributed to the conclusion by other courts that, although a physician holds independent contractor status with respect to the hospital, he may nevertheless be an agent of the hospital with respect to the patient. First, there is a likelihood that patients will look to the institution rather than the individual physician for care due to the changing role of the hospital in today's society. Second, "where the hospital 'holds out' the physician as its employee[,]" a

justifiable finding is that there is an ostensible agency relationship between the hospital and the physician. *Id.* *See also, Simmons v. St. Clair Hospital,* 332 Pa.Super. 444, 481 A.2d 870 (1984). We recognized that a holding out occurs "when the hospital acts or omits to act in some way which leads the patient to a *reasonable* belief he is being treated by the hospital or one of its employees." *Capan,* 287 Pa.Super. at 370, 430 A.2d at 649. (Citation omitted) (Emphasis in original).

Nason argues that neither of these elements, both of which are necessary to support a finding of ostensible agency, are disclosed by the record in this case. Based upon the earlier decisions of this court in *Capan* and *Simmons,* we reach a contrary conclusion. Mrs. Thompson was first admitted to the Appellee hospital through the emergency room. It was there that she came in contact with Dr. Schultz and the other physician who immediately began treating her. In individual affidavits, both Plaintiffs affirmed that when Mrs. Thompson was present in the emergency room neither of them requested that Dr. Schultz treat her. This evidence is uncontradicted and there appears to be no other evidence indicating by what authority the doctors began treating Mrs. Thompson. Thus, as stated in their affidavits, the Plaintiffs assumed that both doctors were employed by the hospital. The available evidence suggests Dr. Schultz treated Mrs. Thompson in the emergency room and subsequently arranged for her admission to the intensive care unit of Nason. Further, he also arranged for diagnostic tests and consultations during her hospitalization with a general surgeon who had vascular training, an ophthalmologist, and apparently, an orthopedic surgeon. In our opinion, because the Plaintiff sought attention from the hospital, and not directly from Dr. Schultz, this evidence raised an inference that the Plaintiff–Appellants looked to the institution for the care of Mrs. Thompson, and not solely to Dr. Schultz for the same purpose.

The Appellee hospital argues that there is no evidence that Dr. Schultz was "held out" as its employee. Nason

does not contend that the Plaintiffs were informed of Dr. Schultz' independent contractor status when Mrs. Thompson was in the emergency room, but rather, that the plaintiffs should have been aware of that status. In support of its position, Nason asserts that Dr. Schultz was Mrs. Thompson's family physician and thus, it would be unreasonable for her to assume that he was employed by the hospital when Mrs. Thompson was treated in its emergency room. The evidence is clear that there was indeed a prior professional relationship between Mrs. Thompson and Dr. Schultz. Specifically, Mrs. Thompson testified that since *1966* she had continued to see either the Defendant Dr. Schultz or another Dr. Schultz, who shared an office, on various occasions. Additionally, Mrs. Thompson testified that both Dr. Schultz' *were* her family doctors. In opposition to these facts the Plaintiff–Appellants point out, Dr. Schultz testified that he *may* have treated Mrs. Thompson after *1976*, although he was not sure. Additionally, in her affidavit opposing the motion for summary judgment, Mrs. Thompson averred that while Defendant Dr. Schultz had treated her children for minor illnesses, she had not been under his care for many years prior to the date in question. We have noted, in that regard, that in her answers to interrogatories, Mrs. Thompson indicated that she had consulted with Dr. Schultz for medical care or treatment within a five year period immediately preceding her 1978 admission to Nason.

We recognize that under different facts, the appellee's argument may indeed be meritorious. However, the facts revealed thus far, drawing all reasonable inferences therefrom in favor of the Plaintiff–Appellants, do not lead us to that conclusion. Quite simply, the statements concerning Dr. Schultz' prior professional relationship with Mrs. Thompson are obviously conflicting and the facts far from clear. It has been held repeatedly that summary judgment should be granted only where there is not the slightest doubt as to the absence of a triable issue of fact. *See, Chandler v. Johns–Manville Corp.*, 352 Pa.Super. 326, 507

A.2d 1253 (1986); *Long John Silver's, Inc. v. Fiore,* 255 Pa.Super. 183, 386 A.2d 569 (1978).

*Simmons v. St. Clair Memorial Hospital, supra,* was a case which also involved the issue of ostensible agency in light of the nature of the on-going physician-patient relationship. In that case, the decedent was brought to the emergency room by his father. The hospital notified the on-call staff psychiatrist who admitted the decedent to the psychiatric unit. Following his discharge, the decedent continued to be treated by the same psychiatrist. During a subsequent admission to the psychiatric unit of the hospital, five months later, arranged by the decedent's psychiatrist, the decedent committed suicide. We concluded that the evidence of record did raise a factual issue concerning the ostensible agency of the doctor. *Id.,* 332 Pa.Superior Ct. at 453, 481 A.2d at 874. Our review of the record in the instant case convinces us that there is a question of material fact concerning Dr. Schultz' ostensible agency relationship with Nason, despite any past and possible continuing physician-patient relationship between Mrs. Thompson and Dr. Schultz. Based upon the principles enunciated by our court in *Capan* and *Simmons,* we conclude that the trial court erred when it granted the motion for summary judgment on the ground that Dr. Schultz was not the ostensible agent of the Defendant–Appellee Nason.

Although our disposition of the first issue would, standing alone, mandate a reversal in this case, it is appropriate that we also address the second argument raised by the Appellants. This is a contention that summary judgment in favor of Nason was inappropriate since there was sufficient evidence of record raising an issue of material fact as to whether the hospital itself was negligent in supervising the exercise of staff privileges by Dr. Schultz. As the Plaintiff–Appellants candidly admit, this is a novel question in our Commonwealth. We are asked to adopt, in the absence of an actual agency relationship between a physician and a hospital, a theory of corporate liability with respect to the hospital. Several courts have done so. *See,*

*Bost v. Riley,* 44 N.C.App. 638, 262 S.E.2d 391 (1980); *Fridena v. Evans,* 127 Ariz. 516, 622 P.2d 463 (1980); *Felice v. St. Agnes Hospital,* 65 App.Div.2d 388, 411 N.Y. S.2d 901 (1978); *Purcell v. Zimbelman,* 18 Ariz.App. 75, 500 P.2d 335 (1972); and *Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326, 211 N.E.2d 253 (1965), *cert. denied in,* 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209. This concept of holding a hospital responsible where it failed to monitor and review medical services being provided within its facilities has been called the "emerging trend." *Fridena,* 127 Ariz. at 519, 622 P.2d at 466.

The theory of corporate liability, or corporate negligence differs from the vicarious nature of *respondeat superior,* in that corporate negligence occurs when a duty owed *directly* by the hospital to the patient has been breached. *Bost, supra.* Underlying the theory is the concept that modern hospitals play a much more active role in furnishing patients medical treatments. It was perhaps best stated in *Darling, supra,* where the theory appears to have originated:

> ' "The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes [sic], as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of 'hospital facilities' expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility." '

*Darling,* at 332, 211 N.E.2d at 257, quoting, Fuld, J., in *Bing v. Thunig,* 2 N.Y.2d 656, 666, 163 N.Y.S.2d 3, 11, 143 N.E.2d 3, 8 (1957). We agree with the reasoning of the

above cited cases and recognize that the fact that merely because certain doctors are not employees of a hospital does not mean such institution cannot be held liable for adverse effects of treatment or surgery approved by the doctors. This basis of liability is distinct from the theory of *respondeat superior.*

■ However, we deem it important to point out that for a hospital to be charged with negligence for failing to supervise the quality of care or competence of its staff, it is necessary to show that the hospital had actual or constructive knowledge of the procedures utilized. *See, Fridena,* 127 Ariz. at 519, 622 P.2d at 466; *Purcell,* 18 Ariz.App. at 83, 500 P.2d at 343. Moreover, the negligence of the hospital must have been a substantial factor in bringing about the harm to the plaintiff. *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978).

■ The Defendant–Appellee argues, assuming we adopt the reasoning of the court in *Darling, supra,* that the staff of Nason acted reasonably and appropriately at all times. We note that when the trial court granted summary judgment in favor of the Defendant–Appellee, it did not address the Appellants' argument with respect to the issue of corporate liability. We do not fault the trial court's action since, until today, this theory of liability was not recognized in Pennsylvania. At this juncture of the litigation, however, we need not reach a final decision on the question of whether or not the staff at Nason acted reasonably and appropriately at all times. It will suffice at this stage to merely note that a thorough review of the record of this case convinces us that there is a sufficient question of material fact presented as to whether Nason was negligent in supervising the quality of the medical care which Mrs. Thompson received, such that the trial court could not have properly granted summary judgment on the issue of corporate liability.

Finally, we address the Appellants' third contention, that the trial court erred in granting summary judgment on the ground that there was no genuine issue as to Dr. Schultz'

actual agency relationship with Nason. The Appellants' position, in that regard, was based entirely upon written bylaws, rules and regulations governing the Nason medical staff. While we do not perceive error in the lower court's decision on that point, based on the present record, our reversal of the order of summary judgment on the other grounds discussed above, makes it unnecessary that we discuss this issue in any detail. Because the case will proceed to trial, it is appropriate that the lower court decide, during the course of the later stages of this litigation, whether sufficient evidence may be established by the Appellants, on their actual agency theory, to justify its presentation to the finder of fact, as a basis for a recovery by the Appellants. *See, Breslin by Breslin v. Ridarelli,* 308 Pa. Super. 179, 454 A.2d 80 (1982).

The order of the lower court granting summary judgment is reversed. The case is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.