## Krout v. Martin

*Donald L. Reihart* and *Janis M. Rozelle,* for plaintiffs.

*Steven D. Snyder* and *Craig A. Stone,* for defendant York Hospital.

HORN, *J.,* February 17, 1989 — This case is before the court on various preliminary objections of defendant York Hospital.

On January 25, 1983, a CT head scan was performed on plaintiff Ruth Krout at the York Hospital. This procedure was performed without the use of IVP dye because of her *known* allergic reaction to IVP dye. Plaintiff was admitted to York Hospital on January 28, 1983, for observation and treatment of her mental condition. It was noted at her admission on her chart and throughout her stay that Mrs. Krout had an allergy to IVP dye.

On February 4, Mrs. Krout was transferred from the Psychiatric Unit to the Cardiac Care Unit because of chest pains. Four days later plaintiff was examined by Defendant Dr. Jack Gracey who scheduled her for a heart catheterization. Plaintiff's counsel admits in his brief that Doctor Gracey did provide Mrs. Krout with general technical information regarding the catheterization, but claims that Doctor Gracey failed to advise Mrs. Krout of any specific risks, including cardiac arrest, or about the use of IVP dye and its alternatives. Plaintiff later signed a surgery consent form supplied by York Hospital and presented to her by a nurse on York Hospital's staff.

Without ever having examined or spoken to Mrs. Krout, defendant C. Edwin Martin, M.D. performed a heart catheterization through an artery in the right arm of plaintiff *using IVP dye*. During the procedure Mrs. Krout suffered a cardiac arrest and emergency measures, including bypass surgery entailing the removal of a leg vein, were necessary to save her life. Unfortunately, complications from the life-saving procedures resulted in the amputation of plaintiff's lower left leg on February 15, 1983.

Aside from the allegations against the aforementioned doctors, plaintiff's complaint contains averments of negligence and battery against defendant York Hospital in counts IV and V. York Hospital demurs to these allegations, filed a motion to strike, or in the alternative, a motion for a more specific complaint to plaintiff's averments of punitive damages and "all other matters for which damages may be recovered under the laws of the Commonwealth of Pennsylvania."

While there is some authority finding hospitals liable for the actions of doctors on a theory of "vicarious liability" or "ostensible agency," plaintiff's

counsel admitted in oral arguments as well as on page 4 of his brief in opposition, that he is not attempting to claim a respondeat superior or vicarious liability, but rather a direct liability against the York Hospital. See e.g., *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 430 A.2d 647 (1980) (finding ostensible liability). Until recently, a direct duty by a hospital to a patient was not recognized in the courts of this state. See e.g., *Margotta v. Lancaster General Hospital,* 47 D.&C.3d 300 (1987).

The basis for plaintiff's negligence claim against York Hospital is a new form of direct liability known as "corporate negligence" and recognized by the Pennsylvania Superior Court in *Thompson v. Nason Hospital,* 370 Pa. Super. 115, 535 A.2d 1177 (1988), allocatur granted in 542 A.2d 1370-1 (1988). Hospital liability through a corporate negligence theory is an emerging trend based upon the realities of modern-day medical treatment. This has been accepted as a viable cause of action in the states of North Carolina, Arizona, New York and Illinois as well as by the Pennsylvania Superior Court. See *Thompson, supra.*

These jurisdictions have reasoned:

"[T]he conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and interns, as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary,

by legal action. Certainly the person who avails himself of 'hospital facilities' expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility." *Darling v. Charleston Community Memorial Hosp.*, 33 Ill. 2d 326, 332, 211 N.E.2d 253, 257 (1965), cert. denied in 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed. 2d 209 (the *Darling* case being one of the originators of a corporate negligence theory) (quoting Fuld, *J.*, in *Bing v. Thunig*, 2 N.Y.2d 656, 666, 163 N.Y.S.2d 3, 11, 143 N.E.2d 3, 8 (1957)). In order to sustain an allegation of corporate negligence, plaintiff must aver that York Hospital was negligent in "failing to supervise the quality of care or competence of its staff. . . ." *Thompson* at 124, 535 A.2d at 1181.

The court finds that plaintiff has adequately set out a corporate negligence cause of action in count IV of the complaint where it is stated, inter alia, that York Hospital "failed to properly monitor and supervise the services provided . . . [and] failed to assure the skill or qualifications of doctors who treated plaintiff. . . ."

We note further that plaintiff must show at trial that York Hospital had actual or constructive knowledge of the procedures utilized and that their negligence was a substantial factor in bringing about the harm to plaintiff. *Thompson* at 124, 535 A.2d at 1182.

Plaintiff alleges a battery claim against York Hospital for failure to obtain her informed consent prior to surgery. While this type of action may be viable against a doctor who has a duty to obtain an informed consent, there is generally no duty on the part of a hospital to obtain this consent. See *Margotta, supra.* Although it is not entirely clear from a reading of plaintiff's complaint and brief, it appears as though plaintiff has mistakenly assumed

that corporate negligence, as found in *Thompson,* may be the underlying basis for a battery committed by a failure to obtain an informed consent.

Our interpretation of *Thompson* and the underlying *Darling* case is one of first impression within this jurisdiction. We find these cases as support for our finding that corporate negligence is a narrowly tailored cause of action allowing liability *only* for negligence "in supervising the quality of the medical care" received. *Thompson* at 124, 535 A.2d at 1182. While it is possible that the damages for corporate negligence and battery under these circumstances are similar, the underlying theories of the two forms of liability are vastly different. We reject the theory that *Thompson, supra,* overruled cases such as *Margotta, supra,* by creating a theoretically inconsistent negligent/intentional battery.

Plaintiff's complaint also avers that York Hospital committed a battery by assuming a duty to inform plaintiff. It is well entrenched case law that even though a party owes no duty, he may be liable for harm that results if he gratuitously, or for consideration, undertakes such a duty. See Restatement (Second) of Torts §§ 323 and 324A; *Pirocchi v. Liberty Mutual Insurance Co.,* 365 F. Supp. 277, 281-2 (E.D. Pa. 1973). The question before the court then becomes whether York Hospital in fact assumed the duty of obtaining plaintiff's informed consent.

Courts are traditionally unwilling to impose affirmative duties on parties and should not do so absent sufficient proof. *Pirocchi, supra* at 281. Plaintiff alleges that York Hospital assumed this duty by having a hospital nurse present a hospital form to plaintiff for signing.

It is obvious to the court that York Hospital did undertake a duty to acquire evidence of plaintiff's informed consent by having a hospital employee

procure a written record of the patient's consent; however, the hospital did not undertake the duty to advise and obtain her informed consent. This responsibility was left solely to the doctor. A review of the pleadings and depositions indicates that the battery claim against York Hospital is unwarranted and unsupported by the pleading and to permit this issue to proceed to trial would clearly be an exercise in futility and a pointless consumption of judicial time; therefore, we grant defendant York Hospital's demurrer as to the battery.

The accompanying issue of punitive damages against York Hospital on the battery count therefore becomes moot and is dismissed.

The Restatement (Second) of Torts §908(2) states that punitive damages "may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Within the purview of medical negligence actions the standard is "whether there has been sufficiently aggravated conduct contrary to the plaintiff's interests, involving bad motive or reckless indifference, to justify the special sanction of punitive damages." *Medvecz v. Choi,* 569 F.2d 1221 (3d Cir. 1977) (involving an Altoona, Pa. hospital). In *Medvecz, supra,* the court held that the issue of punitive damages against an anesthesiologist should have gone to the jury with the facts showed that he may have abandoned his patient during an operation without a substitute anesthesiologist.

Similarly, in *Martin v. Johns-Manville Corp.,* 322 Pa. Super. 348, 469 A.2d 655 (1983), order vacated by 508 Pa. 154, 494 A.2d 1088, on remand to 349 Pa. Super. 46, 502 A.2d 1264 (1985) the court allowed the issue of punitive damages to go to the trier of fact when the corporation did not follow medical advice regarding the danger of asbestosis.

478

The court finds that the facts alleged are legally insufficient to support a finding of punitive damages against York Hospital on the issue of corporate negligence as corporate negligence is a direct action against York Hospital, and to support a claim for punitive damages on this theory the complaint must therefore allege facts constituting bad motive or reckless indifference *directly* by York Hospital. While the complaint properly alleges the negligence of York Hospital, it is completely devoid of assertions constituting the basis for punitive damages and therefore is inadequate to survive defendant's preliminary objections.

The final preliminary objection before the court is a *Connors*-type objection to plaintiff's averment for "all other matters for which damages may be recovered under the laws of the Commonwealth of Pennsylvania." As York Hospital cannot lawfully be required to defend against that which is unknown to them, this phrase will be stricken in accordance with the provisions of Pa.R.C.P. 1021(a) requiring specificity in pleadings.

Accordingly, we enter the following

## ORDER

And now, February 17, 1989, for the reasons stated in the foregoing opinion, the court denies defendant's objection as to plaintiff's count IV on the theory of corporate negligence; the court grants defendant's objections and dismisses plaintiff's battery claim, the underlying punitive damages claim in count V and those portions of the complaint which seek damages for "all other matters for which damages may be recovered under the laws of the Commonwealth of Pennsylvania."