## Cizewski v. Mazaheri

*Robert Slota Jr.,* for plaintiff.
*Joseph Walker,* for defendant Doylestown Hospital.

GARB, *P.J.,* March 26, 1991—This is a medical malpractice suit. Plaintiffs assert that defendant doctors were guilty of negligence in performing a surgical procedure to remove a kidney stone. Plaintiffs also assert that defendant hospital is likewise liable for the negligent conduct of defendant doctors in performing that operation. We granted summary judgment for the hospital from which plaintiffs have appealed.

Plaintiff Margaret A. Cizewski was a private patient of defendant Ahmed Mazaheri, M.D., and had been for a period of approximately 14 years prior to 1983. She had a history of left flank plain, microscopic hematoma, and urinary tract infections. In May 1983, she presented herself to the Doylestown Hospital complaining of the sudden onset of left flank pain, increasing frequency of urination and burning upon urination. She was examined, instructed to provide a urine culture, given a prescription, and instructed to contact her regular physician, Dr. Mazaheri, to follow up with her condition. Several days later, Dr. Mazaheri saw Mrs. Cizewski in his office, and after conducting further examinations and tests, diagnosed a kidney stone and instructed her to enter the Doylestown Hospital on June 20, 1982 to have an intravenous urogram performed. During the course of this hospitalization, it was diagnosed that plaintiff had a kidney stone in the mid portion of the left ureter. Dr. Mazaheri recommended that surgery should be performed for the removal of that stone.

On June 21, 1983, following the urogram and cystoscopy, Dr. Mazaheri, assisted by defendant Dr. Akbari, performed a left ureteral lithotomy, and the stone was removed. It is alleged that plaintiff sustained an injury to her subcostal nerves, injury to her urinary tract, and permanent scarring in connection with the aforesaid surgery. Based upon the foregoing facts, we granted summary judgment in favor of the hospital.

It is now clear that general agency principles apply to hospitals and physicians. *Tonsic v. Wagner,* 458 Pa. 246, 329 A.2d 497 (1974). In order to establish actual agency, it must be shown that an employer hospital controlled or had the right to control the physical conduct of the servant physician in the performance of his work. *Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970), and *Schneider v. Albert Einstein Medical Center,* 257 Pa. Super. 348, 390 A.2d 1271 (1978). A physician may be an agent of a hospital if his duties involve general administration of the hospital and giving treatment therein. See *Brown v. Moore,* 247 F.2d 711 (3d Cir. 1957), and *Purcell v. Zimbelman,* 18 Ariz. App. 75, 500 P.2d 335 (1972). Where there is conflicting evidence, it is for a jury to decide whether the requisite right of control exists to impose vicarious liability on the employer. *Thomas v. Hutchinson,* 442 Pa. 118, 275 A.2d 23 (1971).

As a general rule, a hospital is not liable for the negligence of independent contractor physicians. However, an exception to this general rule has been recognized where there is evidence that the physician is an ostensible agent of the hospital. In establishing such liability, the Superior Court in *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 430 A.2d 647 (1980), adopted section 429 of the Restatement (Second) of Torts as an exception to the

general rule that an employer is not liable for torts committed by an independent contractor in his employ. See *McDonough v. U.S. Steel Corporation,* 228 Pa. Super. 268, 324 A.2d 542 (1974). Section 429 provides in relevant part as follows:

"One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants."

Thus, section 429 has been denominated as the ostensible agency theory and has been applied to cases involving hospital liability for the negligence of independent contractor physicians. The courts in those cases which have so applied it, have concluded that despite the fact that a physician holds independent contractor status with respect to a hospital, he may nevertheless be an agent of the hospital with respect to the patient. Two factors contribute to this conclusion. The first is the changing role of the hospital in society which creates a likelihood that patients will look to the institution rather than to the individual physician for care, and the second exists where the hospital "holds out" the physician as its employee. A holding out occurs when the hospital acts or omits to act in some way which leads the patient to a reasonable belief he is being treated by the hospital or one of its employees. *Capan v. Divine Providence Hospital, supra.*

Therefore, there are two factors which are relevant to a finding of ostensible agency. The first is whether the patient looks to the institution rather than the individual physician for care; and the second is whether the hospital holds out the physi-

cian as its employee. *Simmons v. St. Clair Memorial Hospital,* 332 Pa. Super. 444, 481 A.2d 870 (1984). See also, *Thompson v. Nason Hospital,* 370 Pa. Super. 115, 535 A.2d 1177 (1988). In that case, as in *Simmons* and *Capan,* the plaintiff was admitted to the hospital through the emergency room and was afforded treatment by a physician either on the staff of the hospital as an employee or a physician on call as in the *Thompson* case. It so happened that the doctor in the *Thompson* case happened to be the plaintiff's personal physician, but he began his treatment with respect to this admission because of the fact that he was on call in the hospital at the time she admitted herself. In each of these three cases, the plaintiffs entered the hospital voluntarily looking to the hospital for treatment as opposed to being admitted by their private physicians. As such, in each of these cases, the two prerequisites of ostensible agency were established. The patients looked to the hospital, at least initially, for treatment, and the hospital afforded that treatment through the use of either the hospital staff or physicians on call. The hospitals held themselves out as the purveyors or deliverers of the services rendered.

In the case before us, plaintiff was a longtime patient of Dr. Mazaheri who had been treating her for the very same condition for which surgery was performed in this case. He examined her in his office and decided upon at least the preliminary diagnosis. It was at his direction that she was thereupon committed to the hospital for further testing and ultimately the surgery which was performed. Based upon these facts, we believe there is no evidence on this record to establish the ostensible agency of the hospital.

Secondly, plaintiffs assert the liability of the hospital based upon a theory described as "corporate

liability." This theory of liability on the hospital was adopted in *Thompson v. Nason Hospital, supra.* * The court, in *Thompson,* asserts that the theory of corporate liability, or corporate negligence, differs from the vicarious nature of respondeat superior in that corporate negligence occurs when a duty owed directly by the hospital to the patient has been breached. The underlying theory apparently is the concept that modern hospitals play a much more active role in furnishing medical treatment to patients. The court adopts this theory in reliance upon *Darling v. Charleston Community Memorial Hospital,* 211 N.E.2d 253 (1965), which in turn evolved this theory of liability from *Bing v. Thunig,* 2 N.Y.2d 660, 143 N.E.2d 3, 163 N.Y.S.2d 3 (1957), wherein the New York court stated as follows:

"The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and interns, as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly the person who avails himself of 'hospital facilities' expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility."

---

* In this case, this aspect of the opinion is apparently dictum because the court had already determined that the trial court had erred in granting summary judgment for the hospital based upon the theory of ostensible agency.

Considering the cases cited earlier in this opinion with respect to the doctrines of respondeat superior relating to hospital liability, this latter-day evolution of what is denominated a unique theory of liability is anomalous. Both *Thompson* and *Darling* trace their roots to *Bing v. Thunig, supra.* In that case, the plaintiff's injuries occurred as a result of her being prepared for surgery and the placement of several layers of sheets under her on the operating table. The nurses, direct employees of the hospital, swabbed the area of the surgery with an inflammable liquid. Some of the liquid dripped upon the sheets lying under the patient. In the procedure followed by the doctor, he used a heated iron to cauterize the area of the surgery. When the hot iron came in contact with the inflammable material which had soaked into the sheets, a fire ensued, and the patient was burned. Obviously, there is no difficulty in that case based on Pennsylvania law as we know it, in finding the hospital liable for the direct negligence of its direct employees.

However, this case assumed a great deal of importance in New York because it effected the reversal of *Schloendorff v. Society of New York Hospital,* 211 N.Y. 125, 105 N.E. 92 (1914), which had established a compromise position between unlimited liability of hospitals for the negligent conduct of their servants and the prior legal theory of charitable immunity. *Schloendorff* had established that the liability of a hospital for injury-producing acts of its employees is only established where negligent acts are "administrative" rather than "medical." *Bing v. Thunig, supra,* merely abolished that distinction and held that the traditional theories of negligence and respondeat superior are applied even though the defendant is a corporate entity in the form of a hospital.

"As is apparent, the liability asserted against the hospital is predicated on an independent act or commission of the hospital-employed nurses, and not on any conduct of theirs ordered or directed by a visiting doctor or surgeon or, for that matter, by any physician. The evidence strongly supports the findings, implicit in the jury's verdict, that some of the inflammable zephiran solution had dropped on the sheet beneath the plaintiff's body, that it had left a stain discoverable upon inspection, that the nurses in attendance had full opportunity before the beginning of the operation, to remove the stained linen and that the solution (which had dropped on the sheet) had given off a gaseous vapor that ignited on contact with the heated cautery. In the light of these facts, the jury was thoroughly justified in concluding that the failure of the nurses to remove the contaminated vapor producing linen constituted the plainest sort of negligence." *Bing v. Thunig,* 2 N.Y.2d 660, 143 N.E.2d 3, 163 N.Y.S.2d 3 (1957).

Following the quote from that opinion heretofore set forth from *Darling,* the court stated:

"Hospitals should, in short, shoulder the responsibilities borne by everyone else. There is no reason to continue their exemption from the universal rule of *respondeat superior.* The test should be, for those institutions, whether charitable or profit-making, as it is for every other employer, was the person who committed the negligent injury-producing act one of its employees and, if he was, was he acting within the scope of his employment." (emphasis supplied)

We fail to understand how this case can be considered to be the genesis of some new theory of liability. This case represents the State of New York coming into the latter half of the 20th century with

respect to the now universally discredited theory of charitable immunity. Pennsylvania had long since done so.

Believing as we do that the touchstone of these cases is the traditional concept of respondeat superior in the relationship of the hospital to its employees, we believe that the summary judgment was appropriately granted. The opinion of *Bing v. Thunig,* in the quotes heretofore set forth, speaks in terms of the liability for the negligent conduct of the hospital's regular employment on a salary basis of its staff physicians, nurses and interns as well as administrative and manual workers. In that case, as previously noted, the negligence was directly attributable to the hospital's employed nurses. In *Darling,* the plaintiff was admitted to the hospital emergency facilities having broken his leg in a football game and he was treated by a doctor who was on emergency call that day by the hospital. In *Thompson,* the patient was admitted to the emergency ward of the hospital after having been involved in an automobile accident and was treated by a Dr. Schultz who may or may not have been her treating physician at that time, although he had previously been such, but who was called upon to treat her merely because he was in the hospital at that time. She had not engaged him, but rather had looked to the hospital for treatment when she was admitted to the emergency ward.

No similar facts are to be found in this case. Plaintiff in this case was a long-term patient of Dr. Mazaheri and had gone to his private office for examination, diagnosis, and treatment of her symptoms. It was upon his instructions that she entered the hospital for further tests and ultimately the surgery which forms the basis of this lawsuit. Thus,

there is no evidence to show any theory upon which the hospital can be found to be liable for the alleged negligence of either of these doctors. For the foregoing reasons, the summary judgment motion was granted.