## Moyer v. Musser

C.P. of Lancaster County, no. 356-1996.

*James D. Hagelgans,* for plaintiffs.
*Mark T. Riley,* for defendant.

STENGEL, *J.*, June 30, 1997—This matter is before the court on cross-motions for summary judgment. Specifically, defendant Wendy Musser contends that there is no genuine issue of any material fact and that, as a matter of law, plaintiffs' claim for noneconomic damages should be dismissed because plaintiff Sally Moyer has not met the serious injury threshold that is required by the limited tort provision of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq. Plaintiff counters that she was covered by the full tort option at the time of the accident. In the alternative, plaintiff claims she has indeed met the serious injury threshold because she has sufficiently demonstrated a serious impairment of body function.

Plaintiffs Mr. and Mrs. Moyer initiated this action to recover damages for injuries allegedly sustained in a motor vehicle accident on April 20, 1994. In addition to seeking damages for economic loss, plaintiffs are seeking damages for pain and suffering, which is a form of noneconomic loss defined by section 1702 of the MVFRL. Plaintiffs averred in their complaint that at the time of the accident they were covered by the full tort option. Defendant filed an answer to the complaint denying plaintiffs' contention and averring that plaintiffs were covered by only a limited tort option at the time of the accident. In her new matter, defendant raised all defenses available to her under the MVFRL, which includes the defense of the limited tort election.

Pennsylvania Rules of Civil Procedure 1035.1 through 1035.5 govern the summary judgment motions in this matter. Under Rule 1035.2:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, a party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

Therefore, a motion for summary judgment is based upon an evidentiary record which entitles the moving party to judgment as a matter of law, and which is one of two types: (1) the record shows the material facts are undisputed, and hence, no issue exists to be submitted to the jury; or (2) the record contains insufficient evidence of facts to make out a prima facie cause of action or defense and hence, there is no issue to submit to the jury. In the latter instance, the motion for summary judgment is made by a party who does not have the burden of proof at trial and who does not have access to the evidence to make a record which affirmatively supports the motion.

The burden of responding to a motion for summary judgment is set forth in Pa.R.C.P. 1035.3:

"(a) The adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within 30 days after service of the motion identifying

"(1) one or more issues of fact arising from the evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

"(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced."

In responding to a motion for summary judgment, an adverse party under Rule 1035.2(b) "may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence."

In ruling upon a summary judgment motion, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ertel v. The Patriot-News Co.,* 544 Pa. 93, 101, 674 A.2d 1038, 1042 (1996).

When the motion for summary judgment is based upon the contention that the plaintiff has failed to meet the serious injury threshold, the court, as a matter of law, must initially determine whether the plaintiff has met the serious injury threshold by determination of sufficient evidence of record. Only in cases in which there is a substantial dispute of fact regarding the nature and extent of the injury is the threshold question for the jury. *Dodson v. Elvey,* 445 Pa. Super. 479, 494, 665 A.2d 1223, 1231 (1995), *allocatur granted,* 544 Pa. 608, 674 A.2d 1072 (1996), citing *Curran v. Children's Service Center Inc.,* 396 Pa. Super. 29, 578 A.2d 8 (1990).

As her first issue, defendant claims that she is entitled to summary judgment because there is no genuine issue

of material fact as to plaintiffs' election of the limited tort option. Plaintiffs claim in their motion for summary judgment that there is no genuine issue of material fact as to their election of the full tort option. It appears to me that there are disputed issues of fact as to the tort election and, therefore, I must deny both motions for summary judgment.

In order to lower insurance rates, the MVFRL enacted a two-tier recovery system which offers insureds different levels of protection based upon the premium paid. *Dodson, supra* at 484, 665 A.2d at 1231. The limited tort alternative provides as follows:

"*Limited tort alternative.*— Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss. . . ." 75 Pa.C.S. §1705(d).

Defendant claims that plaintiffs selected this limited tort option when they initially purchased their automobile insurance policy in 1990 and that it was still in effect at the time of the accident in question.

Defendant offers the following account of plaintiffs' insurance history. Plaintiffs were originally insured with Federal Kemper prior to the date of this accident. The Moyers elected a limited tort option with Federal Kemper in 1990. (See a copy of the May 29, 1990 limited tort election form attached to defendant's sur-reply as exhibit "A.") The declaration page attached to the Federal Kemper policy reflects a limited tort election for the policy period January 5, 1994 through July 5, 1994. (See a copy of the declaration page attached to de-

fendant's sur-reply as exhibit "B.")[1] This accident occurred on April 20, 1994.

On May 16, 1994, plaintiffs' insurance agent, pursuant to plaintiffs' request, effectuated a change of insurance carriers, a change in coverage, and a change in tort election. Specifically, (1) the automobile insurance coverage changed from Federal Kemper to Anthem Insurance, (2) one vehicle was deleted from coverage and another added to the Anthem policy, and (3) a limited tort election on the Federal Kemper policy was changed to a full tort election on the new Anthem policy. (See a copy of the full tort election with Anthem Insurance Company attached to defendant's sur-reply as exhibit "C.") The effective date of these changes was May 16, 1994, *approximately one month after plaintiff's accident with defendant.* (See a copy of the Anthem declaration page reflecting these changes, attached to defendant's sur-reply as exhibit "D.")

What is confusing about this last Anthem Insurance document and not explained by defendant is why, if it was issued May 16, 1994, does it have an issue

---

1. Where, in answer to or in support of a motion for summary judgment, a party files a brief or memorandum with attached exhibits, without the exhibits being sworn to or otherwise complying with Rule 1035.4, the exhibits should be excluded from consideration as part of the record. See *Irrera v. SEPTA*, 231 Pa. Super. 508, 514, 331 A.2d 705, 707 (1974). However, in *Irrera*, the Superior Court expressly declined to rest on the procedural ground, and instead went on to determine that summary judgment was proper *even if* the improper exhibits were considered. *Id.* at 514, 331 A.2d at 707-708. Likewise, despite the absence of a proper affidavit in *Kerns v. Methodist Hospital*, 393 Pa. Super. 533, 548, 574 A.2d 1068, 1071-72 (1990), the court addressed the merits of the motion for summary judgment as if the exhibit, *i.e.,* the plaintiff's expert report, had been presented in a proper affidavit. I will follow this example.

date of December 11, 1993, with a policy period of January 5, 1994 through July 5, 1994. This is identical to the issue date and policy period on the Federal Kemper declaration page identified as exhibit "B." Not surprisingly, plaintiffs challenge the authenticity of the Federal Kemper declaration page identified above as exhibit "B" as it was not identified or attached to defendant's response to plaintiffs' request for production of documents nor in the subpoenaed records from Anthem Insurance Company or its predecessor Federal Kemper.

Plaintiffs rely upon the Anthem declaration sheet for the period of January 5, 1994 through July 5, 1994, in claiming to have been covered by the full tort option on the date of the accident. (See a copy of the Anthem declaration page attached to plaintiffs' brief as exhibit "B" and to defendant's sur-reply as exhibit "D.") (See also, the affidavit of Sally Moyer.) Plaintiffs argue that unless defendant is able to produce a section 1705 limited tort selection form signed by plaintiffs after January 5, 1994 and before or on April 20, 1994, plaintiffs are deemed to have full tort coverage.

Significantly, plaintiffs do not contest the authenticity of the limited tort election form signed by them in 1990 or the full tort election form signed by them in May 1994, just days after the accident. They have not produced any other tort selection forms to rebut the 1990 and 1994 forms produced by defendant. Instead, plaintiffs rely solely on the Anthem declaration sheet which indicates full tort coverage for the period in question. Admittedly, a fair reading of the Anthem declaration sheet is that for a duration of six months, January 5, 1994 through July 5, 1994, plaintiffs had full tort coverage.

However, relying solely on the tort election forms, it would appear that plaintiffs had only limited tort

coverage at the time of the accident. The second tort election form establishes May 13, 1994 (the date plaintiffs signed the document) as the earliest possible date of the coverage change. The puzzling question is why the Anthem declaration page had an issue date of December 1993 and a policy period of January 5, 1994 through July 5, 1994, if the change in policy, coverage and tort election was effective May 16, 1994. The Anthem declaration sheet reflects the higher premium for full tort coverage, a difference of approximately $160. However, there is no indication if the whole amount was paid or if the difference in the premiums was prorated over the six-month period and only a portion paid for the remaining seven weeks of the policy period. If, in fact, the entire difference was paid in May 1994, would that render the full tort coverage retroactive? Would plaintiffs have had a *reasonable* expectation that the insurer intended to give retroactive full tort coverage? This would be highly unlikely given the fact that the insurance company already had knowledge of a claim by Mrs. Moyer for an automobile accident in April. If only a prorated amount was paid for the change in tort coverage, could plaintiffs have expected anything but prorated full tort coverage for the remainder of the policy, that is, from the effective change date of May 16, 1994 through July 5, 1994?

In ruling on a motion for summary judgment, the court's function under Rules 1035.1 through 1035.5 is not to decide any issues of disputed fact, or resolve conflicting inferences which may be drawn from such facts, but solely to determine whether there is an issue of fact to be tried. *Penn Center House Inc. v. Hoffman*, 520 Pa. 171, 176, 553 A.2d 900, 903 (1989). Moreover, the court is not permitted to determine issues of credibility. *Thompson v. Nason Hospital*, 370 Pa. Super. 115, 535 A.2d 1177 (1988).

Given the discrepancy on the record as to the tort election, it is premature at this time to grant summary judgment to either party.[2] Further, this court will not issue an advisory decision on whether plaintiff has sustained a "serious injury" under the MVFRL when tort election remains in doubt.

Accordingly, we enter the following:

### ORDER

And now, June 30, 1997, upon consideration of the cross-motions for summary judgment filed by plaintiffs Sally and Larry Moyer and defendant Wendy Musser, the briefs filed by the parties and oral argument of counsel, it is hereby ordered that both motions are denied.

---

2. The court will deny the motions without prejudice to renewing the motions at a later time subsequent to the completion of further discovery, but prior to trial.