**Rachlin v. Edmison**

*Bernard W. Smalley,* for plaintiff.
*Kathleen M. Kramer,* for defendant.

GOODHEART, *S.J.,* March 14, 2001—

## SUPPLEMENTAL OPINION OF THE COURT SUR DISMISSALS OF DEFENDANTS EDMISON, FOCUS, PRINCE AND TRI-COUNTY

### INTRODUCTION

On November 14, 2000, I issued an opinion in support of my decisions to grant the motion for compulsory nonsuit of defendant 20/20 Laser Centers—by that time, the sole remaining defendant in this case—and to deny the plaintiff's ensuing motion for post-trial relief.

This supplemental opinion is being issued to complete the record—and to thereby aid the Superior Court in its

disposition of this case—by summarizing the facts supporting dismissal of the case as to the other defendants, even though those rulings were made by other judges of this court.

My decision to issue this supplemental opinion is not meant to suggest that my colleagues could not fully and completely explain their decisions. Rather, because I presided over the actual trial of the case, and thus—having recently issued an opinion—likely have the most familiarity with the matter, it seemed counterproductive to ask three different colleagues to review the file so that they could explain decisions that they made as much as three years previously, given that the correctness of those decisions is readily apparent from the record.

## DISCUSSION

### The Court Lacked Jurisdiction Over Defendants Edmison and Focus

By separate orders dated February 9, 1998 and April 3, 1998, the Honorable Pamela Pryor Dembe sustained preliminary objections filed by defendants Edmison and Focus, respectively, and dismissed those defendants from the case.

According to the objections, Focus is a Canadian corporation, and Edmison a Canadian citizen; neither of those defendants has ever conducted any business in Pennsylvania, or indeed, in the United States generally.

Focus and Edmison were served *in* Canada, by "long-arm" means; though service of process issued by a Pennsylvania court may be made outside the Commonwealth

when sufficient "minimum contacts" exist between the defendant and the location of the forum to make an exercise of jurisdiction reasonable.

The plaintiff traveled to Focus—located in Ottawa, Ontario, Canada—for the surgery that Dr. Edmison performed, and all of the complained-of conduct on the part of those defendants occurred—if anywhere—only in Canada.

The plaintiff did not respond to Edmison's objections. Though the plaintiff did respond to the objections filed by Focus, she apparently did so only because the form of proposed order submitted by Focus was overly broad; in her memorandum of law, the plaintiff acknowledged that she did not oppose dismissal of Focus from the case for lack of personal jurisdiction, and that she had not previously opposed dismissal of Dr. Edmison from the case on the same basis.

Based upon the uncontradicted facts set forth in the affidavits submitted by Dr. Edmison and Focus (and given the plaintiff's consent), the dismissal of these two defendants was unquestionably proper.

### *The Plaintiff's Expert Reports Were Insufficiently Precise To Establish Negligence on the Part of Defendant Prince or Defendant Tri-County*

The initial report of the plaintiff's expert, Wayne F. Bizer D.O., dated April 27, 1999, read—in pertinent part—as follows:

"I believe, to a reasonable degree of medical certainty, subject to the completion of depositions, that there *could be* a deviation in the standard of care by Dr. Prince in

several aspects. First, *it is possible* that Dr. Prince deviated from the standard of care by performing a [photorefractive keratotomy vision] enhancement on Ms. Rachlin. Second, *it is possible* that Dr. Prince deviated from the standard of care by failing to fully and accurately inform consulting physicians of Ms. Rachlin's postoperative treatment, including the administration of postoperative eye drops.

"I believe that Dr. Prince's *possible* deviations in the standard of care resulted in Ms. Rachlin's impaired vision, as well as the inability to correct her visual acuity with glasses or contact lenses. I also believe that *it is possible at this point* that Dr. Prince's deviations in the standard of care increased Ms. Rachlin's risk of suffering visual impairments. . . ." (Bizer report, April 27, 1999, pp. 1-2; emphasis added.)

As shown by the underlined passages, Dr. Bizer's report was completely equivocal on the issue of negligence; at best, Dr. Bizer found that Dr. Prince's care *had possibly* been inadequate. Even though the threshold for admission of expert testimony in Pennsylvania's courts has (deliberately) been set quite low, Dr. Bizer's first report utterly fails to reach it, notwithstanding that the report talismanically states that Dr. Bizer's conclusions have been reached "to a reasonable degree of medical certainty. . . ."

Dr. Bizer's second report, dated July 7, 1999, was addressed to the negligence of defendant 20/20 (and its principal, Dr. George White, who was *not* a party to this case); it contained no criticism of Dr. Prince or Tri-County whatsoever. Interestingly, the first report had mentioned

Dr. White only in passing, and made no criticism of his care.

Based upon these reports, the Honorable Sandra Mazer Moss correctly concluded that the plaintiff would be unable to make out a case of negligence against defendants Prince and Tri-County, and properly granted the motion for summary judgment of Dr. Prince and Tri-County, by order dated November 15, 1999.

*The Plaintiff's Claims Against*
*Defendant 20/20 Arising From the*
*First Surgery Were Properly Dismissed*

In June of 1998, defendant 20/20 sought—and in July 1998 received—leave to file an amended answer, new matter and cross-claim, to plead the terms of a release allegedly given to 20/20 by the plaintiff in August 1995.

In the memorandum of law that accompanied her response in opposition to 20/20's motion for leave to amend, the plaintiff admitted that she "[did] not intend to pursue her claims in connection with the August 25, 1995 surgery performed by Dr. Edmison in Ontario [and that her] claims against . . . defendant 20/20 Laser Centers pertain to the May 17, 1996 surgery in Pennsylvania." (Plaintiff's memorandum of law, filed July 7, 1998, at 2.)

Even without considering these admissions, the plaintiff's complaint does not contain allegations sufficient to sustain a claim of "corporate negligence" against defendant 20/20, as discussed in my earlier opinion in this matter. It also appears that the plaintiff lacked evidence to show that any negligence that occurred before the time

of the second surgery could properly be attributed to defendant 20/20 on a theory of respondeat superior.[1]

There are thus multiple, independently sufficient reasons why my colleague, the Honorable Nitza I. Quiñones-Alejandro granted the motion of defendant 20/20 for partial summary judgment.

## CONCLUSION

For the reasons set forth above, *all* of the court's rulings in this matter were correct.

I therefore respectfully renew the suggestion that my decision to deny post-trial relief must be affirmed.

---

GOODHEART, *J.,* November 14, 2000—

## INTRODUCTION

By the time that this case was assigned to me for trial, all of the plaintiff's claims *except* those asserted against defendant 20/20 Laser Centers had been dismissed by other judges of this court.

---

1. As stated above, Dr. Bizer's first report blamed (to the extent that its equivocal language could be so read) the plaintiff's impaired vision entirely on the *second* surgery, which was performed by Dr. Prince and Tri-County. Dr. Bizer's second report blamed the care provided by Dr. White after the first surgery and before the second, and characterized Dr. White as 20/20's agent, but the plaintiff's complaint contained no such allegations (in fact, the complaint never mentioned Dr. White or the care that he rendered at all) and by this time, the statute of limitations to add such claims had long since run. Dr. Bizer found no fault, in either report, with the care of defendants Edmison and Focus.

After presentation of the plaintiff's case in chief, I granted a defense motion for compulsory nonsuit and dismissed the plaintiff's remaining claims; this opinion addresses the post-trial motions that followed.

## BACKGROUND

In the spring of 1995, the plaintiff (a long-term contact lens wearer) was referred to Harleysville Eye Associates by her regular eye doctor, because she had been experiencing "redness, discomfort and itching in both eyes with contact lenses" (complaint, ¶19), and wanted to be evaluated for laser surgery that would eliminate her need for corrective lenses.

At Harleysville, she was examined by George E. White III, D.O., who referred her to defendant Tri-County Eye Physicians and Surgeons, so that defendant Prince could perform several corneal topographies on her eyes, a necessary prerequisite to the laser procedure. After the topographies were done, the plaintiff underwent bilateral photo-refractive keratotomy,[1] on August 25, 1995, in Ottawa, Ontario, Canada, which was performed by defendant Edmison at his Focus Eye Centre there.[2]

After the first surgery, the plaintiff returned to the care of Dr. White at Harleysville, but about six months later— believing that her eyesight had not been sufficiently cor-

---

1. Laser PRK is a procedure that was popular in the mid-1980s to improve the vision of eyeglass- or contact-lens-wearer to the point where corrective lenses would no longer be required. It has since been largely supplanted by Lasik®, a similar type of procedure.

2. At the time, Laser PRK had not been approved for use in the United States.

rected by the first procedure she came under the care of Dr. Prince, and in May of 1996, he performed a *second* Laser PRK procedure on the plaintiff at the offices of 20/20 Laser Centers, in Plymouth Meeting, PA.[3]

According to the plaintiff's complaint, the second PRK procedure significantly *worsened* her vision, and on August 21, 1997, she commenced the instant lawsuit against Edmison, Focus, Prince, Tri-County and 20/20 Laser Centers.

*Significantly, the plaintiff's complaint does not allege that her injuries resulted from the care that she received following the first procedure and before the second, and neither Dr. White nor Harleysville were named as defendants in the action.*

The plaintiff requested—and obtained—Dr. White's treatment records in April 1998. In his letter to Dr. White requesting those records, the plaintiff's counsel *specifically* reassured Dr. White "that [he was] not considered a defendant in this action. . . ."

The initial report of the plaintiff's expert, Wayne F. Bizer D.O., dated April 27, 1999, placed the blame for the plaintiff's unsatisfactory outcome on the treatment rendered to her by Dr. Prince and Tri-County[4] following the first laser treatment, up to and including Dr. Prince's decision to perform the second surgery. This report men-

---

3. By this point, the Laser PRK procedure had become available in the United States.

4. Dr. Bizer's first report was somewhat equivocal, but—because the plaintiff ultimately did not rely on it—I need not decide whether it provided an adequate basis for testimony.

tioned Dr. White only in passing, and made no criticism whatsoever of his care.

On May 25, 1999, the plaintiff took Dr. White's deposition. Dr. White was not represented by counsel.

By the time that the case was called for trial, all claims against defendants Prince and Tri-County had been dismissed (as had all claims against TLC arising from the *first* surgery), and Dr. Bizer had submitted a second report, in which he—for the first time—blamed Dr. White for the plaintiff's injuries.

TLC (by this time, the sole remaining defendant) filed motions in limine, seeking to preclude evidence of negligence on the part of Dr. White, or of TLC itself. I granted both motions, and prevented Dr. Bizer from testifying.

At the close of the plaintiff's case in chief, I granted the defendant's motion for a compulsory nonsuit; the instant timely post-trial motion followed.

## DISCUSSION

Though the Rules of Civil Procedure permit a complaint to be amended at any time—even *during* trial—to conform to the evidence adduced, provided that the amendment does not enlarge or alter the substance of the plaintiff's claims, by the time that Dr. Bizer submitted his second report, the statute of limitations had long since run on any care rendered to the plaintiff by Dr. White.

The plaintiff thus could not amend her complaint to assert a claim against Dr. White directly, and—indeed—she did not even request leave to do so.

The plaintiff claims, however, that Dr. Bizer's report was sufficient to support her claims against TLC based

upon "corporate negligence" as defined in *Thompson v. Nason Hospital,* 370 Pa. Super. 115, 535 A.2d 1177 (1988).[5]

The plaintiff also contends that paragraph 46 of her complaint contains allegations sufficient to support Dr. Bizer's proposed testimony,[6] because the jury should have been allowed to decide whether Dr. White was acting as an agent of TLC at the time that he rendered allegedly-deficient care to the plaintiff. That may be true, but Dr. Bizer's second report contained no analysis of the independent duty owed to the plaintiff by TLC, nor any specific examples of how that duty had been breached.

"Corporate liability" as defined in *Thompson* requires a plaintiff to prove negligence in one of four enumerated areas; it is not merely a substitute for liability based upon agency in cases where agency cannot be proven. Because Dr. Bizer's second report does not set forth specific breaches of any duty owed to the plaintiff by TLC, my decision to preclude his testimony as to "corporate liability" was appropriate.

In *Alumni Association v. Sullivan,* 369 Pa. Super. 596, 535 A.2d 1095 (1987), a Superior Court panel set forth the basic pleading requirements in cases where the liability of a principal turns upon tortious acts of an alleged agent:

5. Subparagraphs (f), (j), (k), (l), (m), (n) and (o) of paragraph 46 of the complaint arguably plead "corporate negligence."

6. The pertinent portion of paragraph 46 of the complaint reads as follows:

"(46) In the care and treatment of plaintiff, defendant, 20/20 Laser Centers, either individually, or acting through their agents, representatives, servants and/or employees was negligent in the following respects. . . ."

"While it is unnecessary to plead all the various details of an alleged agency relationship, a complainant must allege, as a minimum, facts which: (1) identify the agent by name or appropriate description; and (2) set forth the agent's authority, and how the tortious acts of the agent either fall within the scope of that authority, or if unauthorized, were ratified by the principal." *Id.* at 605, 535 A.2d at 1100.

Given that Dr. White's name appears *nowhere* in the plaintiff's complaint, and that the plaintiff maintained—as late as April 1998—that Dr. White was *not* considered a defendant in this case, it is not "clear from the complaint. . . ." [*Perridge v. Horning,* 440 Pa. Super. 31, 44, 654 A.2d 1183, 1189 (1995)] that the reference to TLC's "agents" in paragraph 46 of the complaint was intended to include Dr. White.

For that reason alone, my decision to prevent Dr. Bizer from testifying as to Dr. White's negligence was proper, but this opinion would not be complete without a discussion of the inherent unfairness—whether intended or otherwise—of the last-minute change in the plaintiff's theory of this case.

At the time that Dr. Bizer issued his first report, on April 27, 1999, Dr. White had not yet been deposed, though Dr. Bizer did review Dr. White's records during the preparation of that report. Dr. White's deposition was taken on May 25, 1999. It was not until July 7, 1999—when Dr. Bizer issued his second report—that Dr. White's care was called into question. Shortly thereafter—based upon the second report—Dr. Prince and his practice, Tri-County, obtained dismissal of all claims against them,

which left the plaintiff with an expert report that did not attribute the plaintiff's injuries to negligence on the part of TLC, the sole remaining defendant.

The plaintiff was thus forced into the position of claiming not only that Dr. White—who had not been previously identified by name or description as a negligent actor—had caused the plaintiff's injuries, but that he had done so in his capacity as an agent of TLC. This stretched the allegations of the plaintiff's complaint past the breaking point, resulting in the preclusion orders and the ensuing compulsory nonsuit.

It also appears, from the parties' post-trial submissions, that Dr. White had agreed to indemnify TLC from any claims resulting from his own negligence. Because Dr. White was *never* a defendant in this case—and was, in fact, affirmatively reminded of that fact by the plaintiff's counsel on at least one occasion, several months after the case was filed—allowing the plaintiff to proceed against TLC based upon Dr. White's alleged negligence would have potentially placed Dr. White in the unhappy position of being held liable for his own negligence without having had an opportunity to defend himself.

I am unwilling to assume that TLC's defense of the action would have sufficiently inured to the benefit of Dr. White to have eliminated the obvious prejudice to Dr. White, had the case gone to trial. After all, if TLC lost the case and was forced to pay a judgment, TLC would be able to look to Dr. White for reimbursement; under those circumstances, one might well question whether TLC would defend Dr. White as vigorously as it would defend itself.

## CONCLUSION

For all of the reasons set forth above, my pretrial rulings were correct; a compulsory nonsuit was thus the only proper outcome. I, therefore, respectfully suggest that my decision to deny post-trial relief should be affirmed.