## Davies v. Go

*Kenneth W. Behrend,* for plaintiff.
*Frank J. Stanek,* for defendant William Go, M.D.
*Frank J. Hartye,* for defendant Windber Hospital.

CASCIO, *J.,* February 15, 1993—This case is before us on plaintiff's petition for leave to file amended com-

plaint, and on a motion for summary judgment filed by defendant Windber Hospital.

This action was commenced when plaintiff filed a writ of summons on February 29, 1989. Plaintiff's complaint, filed April 6, 1989, alleges that, on March 3, 1987, plaintiff fell and sustained a colles fracture of the right wrist. She was treated at Windber Hospital and was told to receive follow-up treatment at the office of Dr. William Go.

Plaintiff's actions against the Hospital and Dr. Go are based upon negligence. She alleges that Dr. Go failed to reduce the original fracture, failed to properly affix the wrist during healing, and failed to give timely therapy. She alleges that the Hospital failed to properly diagnose the type and extent of plaintiff's injury and failed to inform Dr. Go of all the radiological findings.

On January 11, 1988, prior to the filing of plaintiff's complaint, the Pennsylvania Superior Court adopted a new theory of corporate liability under which a hospital may be held liable if it fails to uphold the proper standard of care it owed directly to the patient. *Thompson v. Nason Hospital,* 370 Pa. Super. 115, 535 A.2d 1177 (1988), *allocatur granted,* 518 Pa. 642, 542 A.2d 1371 (1988), *affirmed,* 527 Pa. 330, 591 A.2d 703 (1991).

Plaintiff now seeks leave to amend her complaint to add a new cause of action for corporate negligence based upon her allegation that the Hospital failed to properly oversee or supervise Dr. Go.

Plaintiff's original complaint contained allegations of negligence against Dr. Go and the Hospital. Among the allegations against the Hospital were the following:

"(14) Defendant Windber Hospital, by and through its authorized agents or ostensible agents performing the services of the hospital, was negligent and did not

perform to the standard of a reasonable man while performing emergency room and x-ray services for the plaintiff.

"(15) The defendant Windber Hospital, by and through its authorized agents and ostensible agents, was negligent in the management and designation of plaintiff's x-rays and the interpretation thereof; thereby not adequately visualizing or describing the extent of the plaintiff's injury and also in failing to convey to Dr. Go the extent and kind of fracture injury necessary for diagnosis and treatment.

"(16) As a result of defendant Windber Hospital's negligence, the plaintiff suffered pain, suffering and inconvenience; she is limited in the use of her right wrist; her susceptibility to arthritis has been increased; she has had to expend money on doctors and hospital care; she has suffered a loss of enjoyment of living and a loss of earning capacity."

Plaintiff now alleges that the Hospital owed an additional duty to her to have her injuries examined by a competent physician capable of assessing proper treatment. By a petition filed July 22, 1992, Plaintiff now seeks to add the following relevant paragraphs to her complaint:

"(23) Defendant Windber Hospital breached its duty ... by permitting defendant Dr. William Go to evaluate and assess trauma-type emergency room injuries even though Dr. Go's professional skill regarding such emergency room procedures ... was doubtful.

"(24) In particular Dr. Go's competence relative to analyzing and interpreting x-ray films, and making a diagnosis based therefrom, was not of the required skill and knowledge to perform such tasks.

"(25) As a result of defendant Windber Hospital's negligence, the fracture of plaintiff's right wrist was misdiagnosed and maltreated.

"(26) In addition to breaching its duty to the plaintiff to ensure quality care by having and enforcing rules pertaining to x-ray procedure, qualification and performance of doctors and technicians and their relation to emergency room treatment. The defendant hospital also breached its duty to the plaintiff by failing to formulate, adopt and enhance adequate rules and policies for the diagnosis, care and treatment of wrist fracture, nor did it properly oversee Dr. Go and others who practiced medicine by treating the plaintiff and thereby causing her injury wrist [sic] to be maltreated.

"(27) Dr. Go's maltreatment and misdiagnosis of plaintiff's injury may have been prevented if a qualified physician were available to review Dr. Go's care and treatment. Defendant Hospital knew or should have known that Dr. Go's analysis and interpretation may have been inadequately performed by his lack of x-ray skill and in adequate [sic] supervision by defendant Hospital and failing to observe proper x-ray protocol. This caused the plaintiff to endure more pain and suffering ordinarily experienced by her type of wrist fracture."

## DISCUSSION

### I. *Petition for Leave To File Amended Complaint*

Plaintiff was injured on March 3, 1987. Plaintiff commenced her action on February 29, 1989. The *Thompson* decision establishing a new cause of action for corporate negligence was decided by the Superior Court on January 11, 1988 and affirmed by the Pennsylvania Supreme Court on May 20, 1991. The statute of limitations pro-

vides that actions for negligence, including medical malpractice actions, must be commenced within two years. 42 Pa.C.S. §5524.[1] Plaintiff did not file her leave to file amended complaint until July 22, 1992, more than two years after the Superior Court decided *Thompson.*

The issues before the court are whether the statute of limitations has expired, and, if so, whether the court should allow plaintiff to amend her complaint to include a count for corporate negligence even though the statute of limitations has expired.

We will first address plaintiff's contention that the statute of limitations for an action for corporate negligence has not expired. Plaintiff claims that the cause of action for corporate negligence was not established until May 20, 1991, when the Supreme Court affirmed *Thompson.* Defendant contends that the cause of action was established January 11, 1988, when the Superior Court first adopted the theory. For the reasons below, we agree with the defendant.

This court, on November 28, 1989, first addressed the new theory of corporate negligence in *Pollock v. Musser,* no. 474 Civil 1985, slip op. at 12 (C.P., Somerset County, Nov. 28, 1989, Cascio, J.).

"[Holding the hospital liable for its own direct negligence] is a new form of direct liability known as 'corporate negligence,' *Krout v. Martin,* 50 D.&C.3d 472, 474, 102 York Leg. Rec. 179, 180 (1989), and was first recognized in *Thompson v. Nason Hospital, supra* [370 Pa. Super. 115, 535 A.2d 1177 (1988)]."

Plaintiff cites 5 Standard Pennsylvania Practice 2d §24:41 for her proposition that leave to amend a com-

---

1. As amended 1982, Dec. 20, P.L. 1409, no. 326, art. II, section 201, effective in 60 days.

plaint should be granted even after the statute has run based upon a change in decisional law while the case is pending. This section cites *McCormick v. Grunnagle,* 42 D.&C.2d 464 (1967) for its contention that "it has been suggested that a new cause of action may be introduced, even though the statute has run, if there has been a change in the law of which the plaintiff seeks to take advantage." 5 Standard Pennsylvania Practice 2d §24:41, page 78.

"We have recently entered an opinion ... holding on the authority of *Kuchinic v. McCrory,* 422 Pa. 620, [222 A.2d 897] (1966), that where there is a change in the law, a complaint in a pending lawsuit may be amended to take advantage of that change in the law, even though the statute of limitations has run, and in effect, a new cause of action or theory of recovery is thereby introduced." *McCormick, supra* at 466.

We disagree with plaintiff's interpretation of the holdings in *Kuchinic* and *McCormick.* Plaintiff is suggesting that litigants must wait and see whether a case introducing a new cause of action is appealed, and if so, whether the Pennsylvania Supreme Court affirms the lower court's rulings.

"While there are no cases in Pennsylvania dealing with the effect of a change in decisional law pending appeal, there is authority in a closely related field. Unless vested rights are affected, a court's interpretation of a statute is considered to have been the law from its *enactment* date, despite contrary intervening holdings. (citations omitted) In such circumstances, the latest interpretation is applicable to a case whose appeal has not yet been decided." *Kuchinic* at 625, 222 A.2d at 900. (emphasis added) (footnotes omitted)

Since *Kuchinic* was decided, a common pleas court has addressed whether a plaintiff may amend his com-

plaint after the statute of limitations has run to add a new cause of action adopted after he filed his original complaint. In *Thompson v. Wyeth Laboratories, Divisions, etc.,* 56 Delaware L.J. 370, 46 D.&C.2d 360 (1969), the plaintiff was permitted to amend his complaint to allege strict liability on the ground that the law had changed to adopt strict liability after his original complaint was filed. However, the facts in *Thompson* differ from ours in that plaintiff in the case at bar filed her original complaint *after* the Superior Court adopted the new theory of corporate liability. Had plaintiff filed her complaint before *Thompson,* we would have allowed her to amend her complaint. However, we find that plaintiff has failed to avail herself of law that was existing at the time she filed her original complaint, and because the statute of limitations has since run, she may not now amend her complaint.

We must next determine whether plaintiff may amend her complaint to add an action barred by the statute of limitations. The amendment of pleadings is governed by Pa.R.C.P. 1033.

"A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleadings. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted."

Amendments to the pleadings are freely allowed under Rule 1033, but this liberality is subject to the qualification that an amendment may not introduce a new cause of action after the statute of limitations has run its course. *County of Lehigh v. A.L. Wiesenberger As-*

*sociates, Inc.,* 21 D.&C.3d 386, 389 (1981); *Hodgen v. Summers,* 382 Pa. Super. 348, 555 A.2d 214 (1989), *appeal denied* 522 Pa. 619, 563 A.2d 888 (1989). As set forth in Goodrich-Amram 2d §1033.38:

"An amendment of the complaint under Rule 1033 which adds or changes the theory of recovery upon which relief is sought through the introduction of new factual allegations generally constitutes a new cause of action, and thus, such an amendment is barred after the expiration of the statute of limitations."

On the other hand, an amendment which merely amplifies and clarifies a cause of action already stated may be amended after the expiration of the statute of limitations. *County of Lehigh v. A.L. Wiesenberger Associates, Inc., supra,* citing *Kuisis v. Baldwin-Lima-Hamilton Corporation,* 457 Pa. 321, 319 A.2d 914 (1974); *Junk v. East End Fire Department,* 262 Pa. Super. 473, 396 A.2d 1269 (1978).

As pointed out by the Pennsylvania Supreme Court,

"[T]he right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party ... An amendment introducing a new cause of action will not be permitted after the statute of limitations has run in favor of a defendant ... This would constitute 'resulting prejudice' to the adverse party. *However, if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the statute of limitations has already run." Connor v. Allegheny General Hospital,* 501 Pa. 306, 310, 461 A.2d 600, 602 (1983) (emphasis in original), quoting *Schaffer v. Larzelere,* 410 Pa. 402, 406-407, 189 A.2d 267, 270 (1963).

Some examples of cases in which the Pennsylvania Supreme Court held that an amendment to a complaint after the statute of limitation had run constituted a mere amplification of the cause of action was (1) where a plaintiff in a medical malpractice case sought to add specific dates of alleged acts of negligence, in *Laursen v. General Hospital of Monroe County*, 494 Pa. 238, 431 A.2d 237 (1981), (2) where the proposed amendment introduced a new theory of recovery based upon the same operative facts previously alleged in the original complaint, because the amendment was deemed to merely clarify the cause of action already stated in the original complaint, in *County of Lehigh v. A.L. Wiesenberger Associates, Inc., supra* and (3) where a plaintiff in a medical malpractice case merely sought to add allegations of other ways in which a defendant was negligent in the same case, under the same theory of law, in *Connor.*

Furthermore, an amendment of the complaint which adds or changes the theory of recovery upon which relief is sought through the introduction of new factual allegations generally constitutes a new cause of action, and thus such an amendment is barred after the expiration of the statute of limitations. *Willinger v. Mercy Catholic Medical Center*, 482 Pa. 441, 393 A.2d 1188 (1978). See also, *Failor v. Telesha*, 39 Cumb. L.J. 540 (1989) (in negligence case involving tavern's alleged service of a visibly intoxicated person, court refused proposed amendment after statute of limitations had run to include allegations of negligence based on absence of safe egress to parking lot).

Therefore, we must first determine whether corporate negligence is a new cause of action.

A new cause of action is one which adds or changes the theory of recovery upon which relief is sought through

the introduction of new factual allegations. *Willinger v. Mercy Catholic Medical Center, supra*. Other factors which may signal a new cause of action include whether a judgment would bar a further cause of action, whether the same measure of damages is involved, whether the same defenses are available and whether the measure of proof is the same. Shugart, *Pennsylvania Civil Practice,* page 91 (1988), citing *Shenandoah Borough v. Philadelphia,* 367 Pa. 180, 79 A.2d 433 (1951); *Saferiders, Inc. v. American Fidelity Fire Insurance Company,* 34 D.&C.3d 435 (1984); *McCormick v. Grunnagle, supra.* If the answer to any of the aforementioned questions is in the affirmative, leave to amend the complaint should be granted, but if not, the amendment should be refused. *Saferiders, supra.*

Applying the above standards to the case at bar, we find that plaintiff's action for corporate negligence is a new cause of action, and is not a mere amplification of her already existing cause of action for negligence. The Superior Court in *Thompson* stated that "[t]he theory of corporate liability, or corporate negligence differs from the vicarious nature of respondeat superior, in that corporate negligence occurs when a duty owed *directly* by the hospital to the patient has been breached." *Thompson, supra* at 123, 535 A.2d at 1181. (emphasis in original) "This basis of liability is distinct from the theory of respondeat superior." *Id.* at 124, 535 A.2d at 1181. Additionally, the Pennsylvania Supreme Court, in affirming the Superior Court's adoption of the new cause of action, stated that "we adopted as a theory of hospital liability the doctrine of corporate negligence or corporate liability under which the hospital is liable if it fails to uphold the proper standard of care owed its patient." *Id.* at 341, 591 A.2d at 708. It is clear

that this standard is separate and distinct from the standard for negligence based on standard agency principles. Thus, the case at bar can be distinguished from *Connor* because plaintiff seeks to add a new cause of action for corporate negligence to her original complaint based only upon agency.

Furthermore, a party's request for amendment should be denied where it would result in prejudice to an adverse party. *Schaffer, supra* at 406-407, 189 A.2d at 270. Even if we were allowed to permit plaintiff to add a new cause of action to her complaint after the statute of limitations has run, an amendment would be prejudicial to the Hospital. The negligence averred in paragraphs 14 through 16 in plaintiff's original complaint was specifically regarding an agency relationship between the Hospital and its emergency room and x-ray personnel, and did not put the Hospital on notice of any other general claims of negligence, particularly corporate negligence. Plaintiff claims that if we were to disallow her amendment, she would be prejudiced thereby. However, we find her contention without merit. Plaintiff filed her first complaint after the first *Thompson* decision and could have taken advantage of the new cause of action then, or she could have filed her request for amendment within two years after the first *Thompson* decision, but failed to do so.

Therefore, we will deny plaintiff leave to file an amended complaint.

## II. *Motion for Summary Judgment*

Defendant Windber Hospital's motion is for summary judgment. A motion for summary judgment may be sustained if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b); *Marks v. Tasman,* 527 Pa. 132, 134, 589 A.2d 205, 206 (1991). Summary judgment may only be entered in cases which are clear and free from doubt. *Id.* at 134-135, 589 A.2d at 206. If the relevant facts are not in dispute, we may reach a conclusion as a matter of law. *Askew by Askew v. Zeller,* 361 Pa. Super. 35, 42, 521 A.2d 459, 463 (1987).

The moving party has the burden of demonstrating the nonexistence of any genuine issue of fact. *Overly v. Kass,* 382 Pa. Super. 108, 554 A.2d 970 (1989); *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 204, 412 A.2d 466, 468-469 (1979). The motion must be considered in the light most favorable to the non-moving party, with all doubts resolved against the moving party, all reasonable inferences made in favor of the opposing party and all well-pleaded facts of the opposing party accepted by the court. *Thompson* at 204, 412 A.2d at 469; *Dibble v. Security of America Life Insurance Company,* 404 Pa. Super. 205, 207, 590 A.2d 352, 353 (1991); *Lower Lake Dock Company v. Messinger Bearing Corporation,* 395 Pa. Super. 456, 461, 577 A.2d 631, 634 (1990).

With this standard in mind, we turn now to the merits of the case. Plaintiff's action against the Hospital is based on ostensible agency. Plaintiff contends that the Hospital is liable for the acts of its employees in performing emergency room and x-ray services, in the management and designation of plaintiff's x-rays and the interpretation thereof, and in not adequately describing the extent and kind of the plaintiff's injury to Dr. Go. (Plaintiff's complaint, paragraphs 14-15.)

"In order to establish a prima facie case of malpractice, the plaintiff must establish (1) a duty owed by the

physician to the patient (2) a breach of duty from the physician to the patient (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) damages suffered by the patient that were a direct result of that harm." *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990). "A plaintiff is also required to present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." *Id.* at 62, 584 A.2d at 892.

On March 30, 1992, this court entered an order stating

"that plaintiffs shall within 120 days from the day of this order serve on all counsel of record and/or parties of interest a further and more complete response to the expert interrogatories filed by both defendants; said response to include the identity and opinion of any expert plaintiff intends to use at trial; *otherwise, to be precluded from presenting at trial the testimony of any expert in support of plaintiff's claim insofar as the same cause pertains as to either testimony."* (emphasis added)

The only expert reports submitted by plaintiff within the 120 days after the order were two letters from Richard S. Goodman, M.D. The Hospital contends that these letters do not present sufficient evidence to establish a prima facie case for medical malpractice against the Hospital. Dr. Goodman's first letter, dated May 5, 1992, stated, inter alia, that:

"(1) A palpation examination of the radius and ulna and styloid process is irrelevant in the treatment of a fractured wrist.

"(2) There is no indication, and it is of no benefit to repair and approximate to the ulna an avulsed process.

"(3) Since the original fracture was a hairline fracture in the anatomical position, there was no indication to reduce the fracture.

"(4) The cast was not too tight when applied, but subsequent swelling made the cast too tight. Loosening the cast at that point was appropriate to prevent a vascular embarrassment to the extremity. Loosening was indicated and was appropriate.

"(5) Removing the cast on April 14, 1987 and changing to a splint is appropriate if x-rays show adequate healing. X-rays done on April 14, 1987 already show shortening of the radius with dorsal angulation.

"(6) This fracture could have been appropriately treated by appropriate casting techniques. The fracture was not unstable, and pin fixation was unnecessary.

"(7) The x-rays taken in his [Dr. Go's] office did reveal the extent and nature of the injury and the healing process.

"(8) Additional care was not necessary, as per the report of March 14."

Dr. Goodman's second letter, dated May 27, 1992, stated, inter alia, that

"Review of all the above information leads me to believe that on March 4, 1987, this woman slipped, fell and incurred a non-displaced fracture of the right wrist. This was treated by Dr. William Go in such a manner that the final outcome was a displaced fracture with angulation and shortening. Based on the documentation, the treatment of a non-displaced fracture in such a manner that the patient results in a deformed, angulated fracture is, to a reasonable degree of medical certainty, below the standard of care."

From Dr. Goodman's letter dated May 27, 1992, it appears that he has sufficiently alleged that Dr. Go deviated from good and acceptable medical standards. However, Dr. Goodman has in no way asserted that the hospital employees who treated plaintiff in the emergency room or those who interpreted plaintiff's x-rays were negligent.

Although the general rule in medical malpractice cases is that expert testimony must be produced, "[e]xpert testimony [is not] a per se requirement in proof of negligence in all cases of alleged medical malpractice." *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 472, 437 A.2d 1134, 1138 (1981).

"The general rule in this Commonwealth is that in order to establish a cause of action for medical malpractice, the plaintiff must present expert testimony establishing variance from accepted medical practice and that this deviation from community standards caused the plaintiff's injuries. (citations omitted) The only exception to the general requirement that expert testimony must be produced is 'where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons.' "

*Mitzelfelt v. Kamrin,* 379 Pa. Super. 121, 126, 549 A.2d 935, 938 (1988), quoting *Chandler v. Cook,* 438 Pa. 447, 451, 265 A.2d 794, 796 (1970). This standard has been found to be equally applicable when evaluating the negligence or malpractice of a hospital. See *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980) (expert testimony not necessary where hospital staff failed to notify attending physician of patient's deterioration).

"It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn." Restatement (Second) of Torts §328(D)(2); *Dierolf v. Slade,* 399 Pa. Super. 9, 15, 581 A.2d 649, 652 (1990), citing *Gallegor by Gallegor v. Felder,* 329 Pa. Super. 204, 478 A.2d 34 (1984).

This is not a case where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of nonprofessional persons. At trial, plaintiff would have to present expert testimony on emergency room practice, x-ray services and interpretation, and the various types of fractures. Because the case at bar does not involve common knowledge which would permit laymen to reasonably draw the conclusion of negligence, we find that expert testimony would be necessary.

The Pennsylvania Rules of Civil Procedure further provide:

"To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto."

Pa.R.C.P. 4003.5(c). Therefore, Dr. Goodman's testimony at trial would be limited to the fair scope of the opinions set forth in his reports. Because those reports contain opinions only about Dr. Go's actions, not about any actions by other hospital employees, he would not

be permitted to testify about the actions of any other hospital employee. Because expert testimony would be required in this case, Plaintiff would not be able to present even a prima facie case of negligence on the part of the Hospital. Therefore, we will grant defendant Windber Hospital's motion for summary judgment.

## ORDER

And now, February 15, 1993, consistent with the foregoing memorandum, plaintiff's petition for leave to file amended complaint is denied. Defendant's motion for summary judgment is granted.